ROGERS v. BABCOCK.

1. LANDLORD AND TENANT — AGENCY — RATIFICATION — HOLDING OVER.

   Before expiration of an annual lease the lessee stated to the lessor's supposed agent, who called, under the lessor's direction, to inspect the heating plant, that he would remain if provision was made for heating, and on assurances supposed by him to be made with authority, he continued to occupy the premises beyond the term. *Held*, that the lessor, by subsequently reiterating the assurances, ratified the agreement of the agent, and, having failed to supply the furnace agreed on as a condition to the continuance of the lease, he relieved the lessee from the payment of further rent on vacating the premises.

2. SAME—SURRENDER OF PREMISES.

   Where a tenant, before leaving the premises, told a relative of the landlord, who had been authorized to make certain repairs, that he intended to vacate, and requested him to take care of the house, which he promised to do, there was a surrender, so far as giving up the premises were concerned, since the tenant was justified in intrusting them to the care of such person as agent.

Error to Wayne; Donovan, J. Submitted October 4, 1904. (Docket No. 66.) Decided February 27, 1905.

Assumpsit by Lincoln S. Rogers against Adelbert H. Babcock for rent. There was judgment for defendant, and plaintiff brings error. Affirmed.

*Graves, Hatch, Millis & Goodenough*, for appellant.

*Alex. J. Groesbeck* and *Thomas J. Navin*, for appellee.

MONTGOMERY, J. This is an action to recover a balance claimed to be due for the rental of a house and lot in the city of Detroit, and also for damages resulting to

the premises during the term through the negligence of the tenant. In May, 1900, the premises were let by a written lease for the term ending May 1, 1901, with the privilege granted to the tenant of renewing the lease for the further period of one year. The premises were in fact occupied by the defendant up to January 27, 1902, when the defendant proceeded to pack and store his household goods, and went South with his family. Because of the house being unoccupied, the water pipes froze, and caused very considerable damage. The rent had been paid up to February 1st. It is to cover the rent for the remainder of the term to May 1st and the damages occasioned by the freezing of the water pipes that this action is brought. On the trial a verdict was rendered in favor of the defendant, and from the judgment entered upon this verdict plaintiff brings error.

Numerous questions are presented in the brief of appellant's counsel, but we think that all may be considered under two or three heads.

It is clear that, in the absence of any agreement modifying the terms of the written lease, the holding over by defendant would have constituted him a tenant for one year from May 1, 1901, and the first question presented, therefore, is whether there was a modification of this agreement. The plaintiff is a resident of New York City. In February, 1901, defendant wrote plaintiff, referring to the fact that the natural gas pressure had become very low, and of the possibility of its being cut off entirely, stating he had been compelled to put in coal grates, and, in addition, to keeping the furnace going to its fullest capacity, had difficulty in keeping warm; that a grate had been put in the dining room at a cost of $20, for which a bill was sent; and the letter concluded:

"If the gas is exhausted next winter, as it bids fair to be, I am told it will be necessary to have a new furnace for coal, as the life has been entirely taken out of the present one by the use of gas."

There was no answer to this letter, but in April one

John O. Teagan, the plaintiff's brother-in-law, a resident of Detroit, called upon the defendant, and then the subject of putting in a new furnace was discussed, and, according to the testimony of defendant, it was stated by him that he would remain through the winter, provided provision was made for heating the house satisfactorily. Mr. Teagan admits that there was talk about putting in a furnace, but states that he had at that time no authority in the furnace matter. Even though Teagan may not in fact have had authority to make the arrangement which the defendant testified to at this time, it is certainly open to grave question whether he had not the apparent authority. He came to deal with defendant in response to his letter relating to the subject of heating the house, at least so far as the grates were concerned, and with no statement from the plaintiff limiting his authority. It would seem that the defendant therefore would have the right to assume that he was acting with authority in whatever he did on the occasion in question. But whether this be so or not, we think it very clear that the plaintiff fully ratified the agreement with Teagan. On the 7th of May defendant wrote plaintiff as follows:

"As I told your cousin when he called, I would remain through next winter, if I can know that the house will be satisfactorily heated; but do not want until cold weather to learn what you will do, and wish you would write me now, and, if you will provide another furnace, kindly give me your assurance to that effect.

"Very truly yours,
"A. H. BABCOCK. R."

And to this plaintiff replied:

"I note what you say regarding the furnace, and will give you my assurance that if it is found necessary, a new furnace shall be put in before next winter. I desire, however, that the present furnace be thoroughly examined by the makers, and have written to Mr. Teagan, requesting that he have a man sent up there. I am of the opinion that either the chimney or the pipe is stopped up, which prevents draught. Again I say that if this furnace can-

not be made to give sufficient heat, I will have a new one put in."

(It is evident that the *cousin* referred to in the letter of May 7th is plaintiff's brother-in-law, Teagan.)

It would be difficult to find a much clearer case of ratification than that shown by these letters. It must have been evident to plaintiff that assurances had been given by Teagan to defendant, and that it was because of those assurances that the defendant had continued to occupy the premises after May 1st.

It is sought by plaintiff's counsel to maintain that this agreement contained in the letter of May 14th was nudum pactum, because at that time defendant had entered upon a new term, and plaintiff was not bound to make repairs under the terms of the lease. But this condition loses sight of the doctrine of ratification. Defendant had in fact had assurances that plaintiff would make the furnace right, and it was in pursuance of assurances supposed by him to be made with authority that he had continued to occupy the premises. Plaintiff reiterated the assurances, and affirmed what his supposed agent had already done. Ratification relates to the time of the performance of the acts ratified, and the present case is as though the original contract or agreement between Teagan and defendant had been made with full authority on the part of Teagan. 1 Am. & Eng. Enc. Law (2d Ed.), p. 1213. We think, then, the case should be determined upon the assumption that there was the agreement substantially as reiterated in the letter of plaintiff under date of May 14th. Following upon this agreement, under date of September 4th, defendant wrote plaintiff as follows:

" I would say that the supply of natural gas was permanently discontinued last month and public notice given, and I would ask that you give the matter of a furnace your attention at once, as I want to put in a supply of coal before there is a raise in price, but at the same time, I do not want to do anything until the matter of furnace is attended that I may act accordingly."

139 MICH.—7.

And in reply to this, plaintiff wrote to defendant:

"I am writing Mr. J. O. Teagan today to make arrangements for perfecting the heating apparatus of the house. You can rest assured the furnace will be properly and promptly attended to and can go ahead and order your coal. I wish you would call Mr. Teagan up on your 'phone at his home or office and give him the name of the furnace and any such other information he may want."

On November 5th defendant wrote to plaintiff:

"Regarding the furnace would say that we are having a cool spell just now and I am unable to satisfactorily heat the house with the furnace alone, having to call on the grates for warmth. I will wait for some pretty cold day when I will have your brother-in-law, Mr. Teagan, come up and try his hand at running the furnace and give it a good test."

To this plaintiff replied:

"As to the furnace if it does not work properly, we will see that it is made to do the work as it is intended to do. You indicate the correct course. Call up Mr. Teagan and have him take a hand at it."

Again, under date of December 2d, defendant wrote to plaintiff:

"As the furnace will burn the coal about as fast as one can put it in, but although a good fire can be obtained it seems impossible to get the proper amount of heat from it and even in the present weather we fall back on the grates. It has been explained to me that furnaces that have used natural gas are afterwards useless with coal, as the gas seems to take life out of the iron and I know that in my own house where I formerly used natural gas, my tenant has just told me of his inability to make it work with coal, and very likely the same trouble exists there as with my furnace. Kindly let me hear from you in regard to the matter."

The testimony on behalf of defendant tended to show that, notwithstanding the efforts to put this heating apparatus in condition, the means provided were wholly insufficient to heat the house, and finally, on the 27th of

January, he decided it was impossible longer to occupy the house, and that he called up Mr. Teagan, told him in substance it was impossible for him longer to occupy it, and that he was going to leave with his family for the South, and asked him to see that the water was drawn from the pipes; that he had employed Leonard Bros. to pack the furniture, and that he would leave the key with them after they had moved out of the house, and that Mr. Teagan promised to do this.    Mr. Teagan's testimony is not materially different.

Upon this branch of the case it is again urged by appellant that Teagan was without authority.   It is said that he had not been given authority to accept a surrender of these premises.   We think this contention may be accepted as correct; but the circuit judge was of the opinion that, as Teagan had charge of the matter of putting this furnace in condition, it was proper for defendant to intrust to him the duty of seeing that the water pipes were properly protected.    The plaintiff's failure to recover upon this branch of the case did not result from the fact that there was a surrender in law and an acceptance, but from the fact that the defendant intrusted to the plaintiff's agent, Teagan, the duty of seeing that the water pipes were protected.    It is not the theory of the defendant that his tenancy was terminated by a technical surrender, but that, the plaintiff having failed to make the furnace do the work contemplated and agreed upon as a condition to the continuance of the lease, this relieved him from the payment of further rent, authorized him to leave the premises, and that in leaving the premises he was justified in intrusting their care to the one who had been commissioned by the plaintiff to see that the furnace was put in condition.    We think this view of the case was justified by the facts and relations of the parties, and that, therefore, it was not error to charge that, if defendant called upon Mr. Teagan, and if defendant, before leaving the premises, told him that he intended to do so, and that Leonard Bros. were to do the packing, and asked Teagan

if he would take care of the house, and see that the water was drawn from the pipes, and that Mr. Teagan, understanding this, said he would do so, this was a surrender, so far as giving up the premises was concerned. See *Henkel* v. *Welsh*, 41 Mich. 664. We gather that the jury must have found that the furnace did not answer to the terms of the agreement, and that for this reason the defendant was justified in leaving the premises, and, this being so, the rent would, of course, cease.

The other questions presented in the case seem to us not to merit special discussion. We are convinced that substantial justice was done, and the judgment will be affirmed.

MOORE, C. J., and CARPENTER, GRANT, and HOOKER, JJ., concurred.