COMMERCIAL BANK OF MENOMINEE v. WEIDMAN.

1. CORPORATIONS—FALSE REPORTS TO CREDITORS—PERSONAL LIABILITY OF OFFICERS AND DIRECTORS.

Under statute imposing personal liability upon officers, directors, and agents of a corporation for loss to creditor thereof who became a creditor either directly or indirectly because of false reports made by the corporation, it is not necessary that such report be signed by vice president and director or that he knew of its issuance to particular creditor (Act No. 327, § 50, Pub. Acts 1931).

2. SAME—FALSE REPORTS—RATIFICATION BY VICE PRESIDENT AND DIRECTOR.

Acquiescence of vice president and director who knew of issuance of identical or substantially similar reports about his corporation to various creditors and banks other than plaintiff and knew or should have known they were false, but continued to be an officer and director and took no steps to stop their issuance, amounted to ratification and rendered him personally liable to plaintiff bank (Act No. 327, § 50, Pub. Acts 1931).

3. SAME—FALSE REPORTS—AGREEMENTS RELATIVE TO DEBTS—FAMILY ESTATE.

Corporate borrower's officers were not relieved from personal liability for loans to corporation made directly or indirectly because of reports rendered false by omission of statement as to corporate liability to family estate following agreement between one of the officers and a sister that corporate indebtedness to estate in which sister and defendant brothers, officers of corporation, were interested would be subordinated to that of other creditors of the corporation where, during period of plaintiff's original and renewal loans, indebtedness to the family estate was materially lessened (Act No. 327, § 50, Pub. Acts 1931).

4. SAME—FALSE REPORTS—LOANS—PERSONAL PROFIT OF DIRECTOR OR OFFICER.

To enable a creditor of a corporation to impose personal liability upon an officer or director because loan was made to corporation after receiving a false report as to corporation's financial condition it is unnecessary to show that such officer or director

profited directly or indirectly by the fact that such loan was made under statute imposing such liability (Act No. 327, § 50, Pub. Acts 1931).

5. SAME—FALSE REPORTS—MINERAL DEPOSITS—WATER RIGHTS.

Falsity of financial statement of lumber company was not excused because books did not reflect that deposits of minerals were under some of company's lands, that oil had been discovered in the vicinity, and that there might be also valuable water rights as such assets were mere possibilities from which creditors could not be paid (Act No. 327, § 50, Pub. Acts 1931).

6. SAME—FALSE REPORTS—RENEWAL LOANS—CONTINUING TORTS.

Tort of lumber company in making false financial statement to plaintiff bank when original loan was secured and in making other false reports when renewals of loan were made was a continuing one and renewal of notes did not constitute waiver of previous rights to hold liable former officer and director who had resigned before last renewal was made (Act No. 327, § 50, Pub. Acts 1931).

7. SAME—PERSONAL LIABILITY OF OFFICERS AND DIRECTORS—FALSE REPORTS—STATUTES.

Statute imposing personal liability upon corporate officer and director of corporation for the making of false reports concerning it is not penal, but is remedial, in character and compensates injured person only to extent of loss by way of reimbursement and reparation (Act No. 327, § 50, Pub. Acts 1931).

Appeal from Ontonagon; Landers (Thomas J.), J. Submitted January 15, 1942. (Docket No. 46, Calendar No. 41,860.) Decided April 6, 1942. Rehearing denied May 18, 1942.

Action by Commercial Bank of Menominee against J. Stanley Weidman, Jr., Evan S. Weidman, and R. M. Weidman to collect sums due on a note from officers of a corporate maker. Judgment for plaintiff against defendant J. Stanley Weidman, Jr. Plaintiff appeals from denial of judgment against defendant Evan S. Weidman. Reversed and

judgment ordered entered against defendant Evan S. Weidman.

*Meredith P. Sawyer,* for plaintiff.

*John B. Bennett* and *Ivan D. Wright,* for defendant.

BUTZEL, J.   The Weidman Lumber Company, a Michigan corporation, with offices and plant located at Trout Creek, Michigan, had a paid in capital of $200,000.   The three Weidman brothers, defendants herein, were its officers, J. Stanley being president, Evan S., vice president, and Robert M., secretary and treasurer.   In earlier years the company had been very successful but in later years it was far from prosperous.   In connection with its lumbering operations it had purchased grocery supplies for its camps.   The company enjoyed excellent credit, though if the truth had been known, it was living off its past reputation reinforced by untrue commercial statements.

Plaintiff, the Commercial Bank of Menominee, Michigan, had a large amount of money to lend and was particularly anxious to obtain short time paper from prosperous concerns in the northern peninsula of this State.   F. X. St. Peter, who had been president and on the loan committee of plaintiff bank for many years, was also the head of a wholesale grocery company.   Knowing of the lumber company's good reputation, he was anxious not only to sell it supplies for its camps, but also to loan it some of the surplus funds of the bank.   He solicited the loan.   Before making it, the bank obtained from it a financial commercial report as of the end of 1935.   The report corresponded in the main to the

one theretofore given by the Weidman Lumber Company to Dun & Bradstreet, a commercial agency, as well as to other banks including the Isabella County State Bank at Mt. Pleasant, Michigan. The testimony showed that it was in reliance on these most favorable reports issued by the company and not on its general reputation alone that the plaintiff bank on September 8, 1936, loaned the lumber company the sum of $15,000 on a four months' note, with the promise of two renewals. The financial statement, issued to plaintiff at the time the loan was made, showed a net worth of approximately $1,000,000. The record leaves no doubt that the statement was absolutely false. As stated by one of the attorneys for defendants:

"This suit is upon the falsity of a particular statement or statements and not based upon individual transactions. We will concede that this company was financially embarrassed and now they have gone into bankruptcy."

It was further conceded that the company was hard up on December 31, 1935, and that defendant Evan S. Weidman knew that the company was hard pressed for ready cash. The audits of the condition of the company at the end of 1935 and 1936 indicate that the company was almost if not entirely insolvent. It at least had an impaired capital instead of the very large surplus shown by the statements.

At the time of the issuance of the statement, J. Stanley Weidman, Jr., was president and general manager of the company. He admitted that the statements were not a true reflection of the books of the company, that he put down values that he deemed correct. His brother Robert had nothing whatsoever to do with the company as far as the records show. The Weidman estate in which Evan

had a one-sixth interest was a large stockholder and was the heaviest creditor of the lumber company. The Weidman family had large holdings of stock in the Isabella County State Bank at Mt. Pleasant, Michigan, 400 miles from Trout Creek. Evan was president of the latter bank and devoted his time to it. He was experienced in business affairs. After graduation from college, he had taken a one-year course in business administration at one of the largest universities in the east; he was a good banker and very successful in the conduct of the bank. The Isabella County State Bank had loaned on direct paper almost 20 per cent. of its capital and surplus to the lumber company, and in addition to this, the lumber company was indirectly liable to the bank for still larger sums. Before making the loans and for a considerable time prior to making the loan by the plaintiff bank, the Isabella County State Bank had also received statements similar to the one sent to plaintiff bank. The record indicates that the December 31, 1935, statement given to the Isabella County State Bank gave the same figures as the statement of the same date given to plaintiff bank. The only current liabilities that this statement showed was the sum of $128,771 for notes payable, which, according to the statement of condition as of the end of 1936, sent to the Isabella County State Bank, increased to $183,200. On December 31, 1935, the lumber company owed, among its notes and accounts payable, the sum of $112,222.53 to the John S. Weidman estate, in which Evan had a one-sixth interest. It also owed to Evan's two brothers and sisters a further sum of $42,590. The amount owing to the Weidman estate alone, together with a large amount owing to the Isabella County State Bank, of which Evan was president, was far in excess of the amount set forth in the statement as the

total current liabilities as of December 31, 1935, and sent to Isabella County State Bank. No mention was made in this statement of the amounts due the Weidman estate. Evan S. Weidman saw this statement.

In addition to this, Evan knew that the lumber company was borrowing very largely from other sources, including a large sum from the Trout Creek State Bank of which Evan was an officer and in which the estate and the Weidmans were heavily interested. Evan testified that he examined the statements upon their receipt by his bank, that he did not question them at all and made no effort to ascertain their truth or falsity. He was also a director, officer, and member of the loan committee of the Trout Creek State Bank but was inactive. Evan also knew that the lumber company was borrowing from other banks. It is almost inconceivable that he did not know that the statements were false and that they were being issued by the company. He took no steps to stop their issuance. He further testified that, although he was vice president of the lumber company, he was also inactive in its affairs, that he was virtually a "dummy" officer and director, and left the entire management to his brother J. Stanley, who was a man prominent in business affairs. His activities as a director consisted principally of occasionally being called on the telephone by his brother J. Stanley, and, no oftener than once a year, going to Trout Creek and making a hurried survey of the company's property.

In addition to the liabilities being actually misrepresented in the statements, the value of the assets was so grossly exaggerated as to have no resemblance to their real value. The value of the inventory of lumber, ties, et cetera, given in the statement of December 31, 1935, is $270,411.60. This

.did not include the supplies. The audit of the company shows that at the end of 1935, all the inventories of the company were only of the value of $117,-128.17. Evan claimed that he saw the lumber and did not realize the discrepancy. The value of the land and standing timber was even more grossly exaggerated in the company's favor in the statement issued by it. It taxes one's credulity to believe that a man of Evan's intelligence and ability could have been misled by the values. He could not, however, have been misled by the statement of liabilities when he knew that the company was borrowing from other sources, and that it owed the Weidman estate and the Isabella County State Bank far more than the amount set down as being the entire indebtedness of the company. As vice president and director, he took no steps to stop the issuance of the statements.

In addition to the foregoing facts, Isabella County State Bank was assisting the Weidman Lumber Company by helping it "kite" its paper, during the period while the plaintiff bank was renewing its notes on the strength of the former statement and a later one made by the Weidman Lumber Company showing its condition "based on actual inventory * * * on December 31, 1936." On October 20, 1936, six weeks after the loan to the lumber company from the plaintiff bank, the lumber company drew two sight drafts on the Isabella County State Bank in the amounts of $5,000 and $3,000, and two days later sent the Isabella County State Bank a check to take care of the drafts. The record does not show how extensive these "kiting" transactions were. They were stopped by the banking commissioner. In the spring of 1937, Evan upon the request of the Federal Reserve Bank resigned as a director of the lumber company.

The plaintiff bank renewed the note of the lumber company from time to time, but finally placed it in the hands of its attorney for collection. $5,000 was paid on the note and renewal given. This was not paid at the time the lumber company went into bankruptcy. Suit was brought by the bank against the three brothers. The trial was without a jury. Judgment was rendered against J. Stanley; Robert was exculpated from all liability as he had little, if anything, to do with the company; and the judge also found that Evan S. was not liable.

The declaration in the suit brought by plaintiff sought to hold them liable as directors in the company under section 50 of the general corporation act (Act No. 327, § 50, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 10135–50, Stat. Ann. § 21.50]), which reads as follows:

"If any report, certificate or other statement made or public notice given by the officers or directors of a corporation shall be false in any material representation, or if any of the books, records or accounts of the corporation shall be knowingly or wrongfully altered, the officers, directors and/or agents knowingly or wrongfully authorizing, signing and/or making such false report, certificate, other statement or notice or authorizing or making such wrongful alterations shall jointly and severally be personally liable to any person who has become a creditor or shareholder of the corporation upon the faith of any such false material representation or alteration therein to the amount of debt contracted upon the faith thereof if not paid when due, or the damage sustained by any purchaser of, or subscriber to, its stock upon the faith thereof. The liability imposed by this section shall exist in all cases where the contents of any such report, certificate, other statement or notice or any material representation therein shall have been communicated

either directly or indirectly to the person so becoming a creditor or shareholder and he shall have become such creditor or shareholder upon the faith thereof. No action can be maintained for a cause of action created by this section unless brought within two years from the time of the discovery of such false representation or alteration and within six years from the time the certificate, report, public notice or other statement or such alteration shall have been made or given, as the case may be, by the officers, directors and/or agents of such corporation.''

J. Stanley has not appealed from the judgment against him nor has plaintiff appealed from the judgment in favor of Robert M. Plaintiff has appealed from the judgment of no cause of action as against Evan. The judge found that the statement was fraudulent and that plaintiff relied upon it as being true. He found that there was no evidence that Evan had any knowledge or information of the credit statement issued by his brother J. Stanley, and that there were no business transactions or delivery between the plaintiff and Evan, and that Evan not having signed any financial statement or report and not having' any knowledge of the same, he could not be held personally responsible. The judge seems to indicate that, in order to hold Evan, it must be shown that he had either signed the statement given to the plaintiff bank or knew of its issuance to the plaintiff bank. We do not believe that the statute can be narrowed to this extent. The question is one of first impression in this State. Our attention has been called to no statutes of other States that are exactly similar. In Delaware, the liability is imposed upon the director or officer who *assents* to a fraudulent statement (Delaware Revised Code [1935], § 2069). Neither has our attention been called to helpful decisions in

similar or analogous cases. Statutes in other States prescribe either a broader or a narrower liability of an officer or director in case of issuance of false statements by the corporation than that prescribed by the Michigan statute.

In the instant case, there is no claim of any liability other than that imposed by section 50 of the corporation act. Did Evan knowingly or wrongfully authorize the issuance of the false reports? Had the false report only been issued to plaintiff bank and had Evan known nothing about it, unquestionably the trial judge would have been correct in his finding, but when Evan knew that identical or substantially similar reports were being issued by the company of which he was director and vice president, and he personally saw copies of them and knew, or should have known, that the statements were false, but he continued to be an officer and director and took no steps to stop the issuance of such reports, his acquiescence amounted to ratification, and was equivalent to prior authorization. *Lyell & Teller* v. *Sanbourn*, 2 Mich. 109, 114; *Rogers* v. *Babcock*, 139 Mich. 94, 97. He is liable under the statute.

J. Stanley attempts to excuse the failure to include the indebtedness to the Weidman estate and members of the Weidman family, because of an agreement made between himself and sister that they would subordinate the claims of the Weidman estate and members of the family so that their creditors would be paid first, and they were willing to do this in the bankruptcy proceedings. The record does not show that in 1935 Evan knew of such an agreement and it becomes of very little significance in view of the fact that from December 31, 1935, the indebtedness to the J. S. Weidman estate was re-

duced from $112,222.53 to $93,035.50 on April 30, 1937. By April 1st of 1938, the year in which the company went into bankruptcy, the indebtedness to the estate had been reduced to $25,154.50.

It was during this period, while the company's indebtedness to the estate was being reduced, that the company obtained the loan and renewals from plaintiff bank. Evan testified that he knew that the Trout Creek State Bank, of which he was vice president, director, and in charge of the loan committee, was loaning sums to the lumber company in 1935, but he denied that he knew the size of such loans. Nevertheless, the inference is inescapable that he knew that this line of credit was being stretched as far as it would go, and by October 27, 1936, 15 days after the making of the loan in suit, the direct, indirect, and accommodation loans and overdraft of the lumber company made its total obligation to the Trout Creek State Bank $69,601.33. On the same day the direct, indirect, and accommodation obligations of the lumber company to the Isabella County State Bank amounted to $87,531.80. By April, 1938, the last figure had been reduced to $37,147.30, and the claim was subordinated in the reorganization proceedings. Evan profited, directly or indirectly, by the fact that the lumber company obtained credit from plaintiff on the strength of the false financial statements. We do not hold that, in order for the liability imposed by section 50 of the corporation act to attach, it is necessary that the defendant director must have profited from the plaintiff's loan, for the statute creates no such prerequisite to recovery. We do, however, attach evidentiary value to the proof that Evan profited from the loan as having a tendency to cast doubt upon his claim of lack of knowledge, or at least to make more

culpable his claimed failure to apply to the statements his admitted knowledge of facts inconsistent with the contents of such statements.

J. Stanley further attempts to excuse the falsity of the statements by claiming that the books did not reflect the fact that surface tests indicated that there were deposits of minerals under some of the land, that oil had been discovered in the vicinity, that there might be also valuable water rights, and that, further, the company had a right to repurchase a large amount of timber from the Ottawa National Forest at a low figure, that these contingent assets did not appear on the books of the company. While such claims might have caused J. Stanley to place an exaggerated value on the fixed assets, he must have known that he was dealing merely with possibilities from which creditors could not be paid.

The declaration in the case is not artistically drawn. It declares on a renewal note of $10,000, dated October 8, 1937, and relies on a statement made on or about that date, and other false statements made to obtain the renewal, and relied upon by the bank in renewing the loan. The attorney for Evan in his answer shows that Evan had resigned as officer and director of the lumber company on May 13, 1937, so that when the last renewal was made he was no longer a director. Plaintiff's answer, however, to this affirmative defense, shows that the reports were continuing ones beginning with the statement as of the close of business of the year 1935, and that the notes were renewals of the original note. We believe the tort was a continuing one, and that there was no waiver by the renewal of previous rights that plaintiff had. *Peoples Wayne County Bank of Dearborn* v. *Harvey,* 268 Mich. 47.

It is claimed on behalf of defendant Evan S. Weidman that section 50 of the corporation act is a penal statute which must be most strictly construed, and that, therefore, he cannot be held liable unless it is shown that he actively participated in the issuance of the statements. The statute is not penal in character. It is remedial and only compensates the injured person to the extent of his loss. It imposes liability in favor of creditors of a corporation by providing for payment of existing obligations in their favor. It merely provides for reimbursement and reparation. *E. S. Parks Shellac Co.* v. *Harris,* 237 Mass. 312 (129 N. E. 617). 3 Fletcher, Cyclopedia Corporations (Perm. Ed.), § 1209; *Huntington* v. *Attrill,* 146 U. S. 657 (13 Sup. Ct. 224, 36 L. Ed. 1123). The trial judge did not properly interpret the law in applying it to the facts in this case. Upon the facts of the record and the proper application of the law, the judge should have entered judgment against Evan S. for the amount due plaintiff bank.

The judgment of the lower court is reversed and the case remanded to the trial court with instructions to enter judgment for the amount due plaintiff with interest against defendant Evan S. Weidman. Plaintiff will recover costs of both courts.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.