KARPP *v.* ROYER.

1. Landlord and Tenant—Breach of Material Covenant—Abandonment—Remedy of Defect—Time.

Deprivation of the beneficial use and enjoyment of leased premises as a result of the breach of a material covenant may be sufficient to justify the abandonment of the premises by a tenant, particularly where, after notice, a reasonable time to remedy the defect has been given the landlord.

2. Same—Gasoline Station—Breach of Covenant to Purchase Tanks.

Plaintiff landlord was not entitled to collect rent from tenant of gasoline station, where after occupancy of 5 months, latter vacated premises because plaintiff had not complied with express provision of 5-year lease that he purchase storage tanks from former supplier of gasoline, which together with lessee's supplier were insisting that the tanks be purchased from their owner or they would be rendered unusable.

3. Appeal and Error—Nonjury Cases—Preponderance of Evidence.

The Supreme Court does not reverse the findings of fact in a nonjury law case unless it can be said that the testimony clearly preponderates against the judgment of the lower court.

Appeal from Lenawee; Martin (Rex B.), J. Submitted October 4, 1960. (Docket No. 9, Calendar No. 48,406.) Decided December 2, 1960.

Assumpsit by Frank J. Karpp and Mary Karpp against Mary Alice Royer and E. W. Royer, doing

References for Points in Headnotes

[1] 32 Am Jur, Landlord and Tenant § 826.
[2] 32 Am Jur, Landlord and Tenant § 474.
[3] 3 Am Jur, Appeal and Error § 896.

business as Thompson Fuel Company, for rent claimed due on lease. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Aloysius B. O'Mara,* for plaintiffs.

*Robertson & Bartlow,* for defendants.

KAVANAGH, J. This is an action at law in assumpsit for rent plaintiff-appellants claim due them under a written lease dated June 28, 1955. The lease covered a service station in Blissfield, Michigan, for a 5-year period commencing on July 11, 1955. Defendants' answer asserted plaintiffs failed to perform certain covenants of said lease, which failure of plaintiffs relieved defendant Mary Alice Royer from liability thereunder.

The case was tried by the court without a jury, and the court rendered a judgment of no cause for action. Plaintiffs appeal.

Plaintiffs entered into a lease with defendant Mary Alice Royer, mother of 20-year old William Royer, whereby defendant Mary Alice Royer agreed to pay a stipulated monthly rental for plaintiffs' service station in Blissfield, Michigan. At the time of the execution of the lease, at the request of Mary Alice Royer, lessor Frank J. Karpp inserted in the lease, in ink, the following language:

"Also first party (Karpp) agrees to purchase storage tanks for gasoline that are in the ground from Sun Oil Company."

William Royer went into possession on July 11, 1955, and began selling Speedway 79 products and used cars. Speedway gasoline was placed in the storage tanks. These tanks, installed in 1942, were located under a concrete slab. One tank had a capacity of 2,100 gallons and the other 2 had capaci-

ties of 5,000 gallons each. They were owned by Sun
Oil Company.

Immediately after William Royer opened the sta-
tion plaintiff Frank J. Karpp contacted Sun Oil
Company to inquire about purchasing the tanks.
Sun Oil Company agreed to sell plaintiffs the tanks
for the sum of $810. Mr. Karpp thought the price
was too high. Sun Oil Company, which had pre-
viously dealt with plaintiffs, on July 26, 1955, in-
voiced them for the price of the tanks. Subsequently,
Sun Oil Company contacted Speedway 79 requesting
its permission to bill Speedway for the storage
tanks. Speedway replied it was not interested. Sun
Oil Company continued to try to collect for the
tanks from plaintiffs. William Royer and his mother
were advised by Sun Oil Company's representatives
that if plaintiffs did not purchase the tanks it would
be forced to remove them or fill them with sand.

William Royer testified he had an impression that
someone was going to remove the tanks, and that
he was scared to think the tanks could be pulled.
Both he and his mother, Mary Alice Royer, knew the
station could not be operated without storage tanks.
A representative of Speedway advised William
Royer and Mary Alice Royer that unless Sun Oil
Company was paid for the tanks, Speedway would
stop delivering its products to the Blissfield station.
Mr. Karpp was advised of this fact. He did not
purchase the tanks. On December 11, 1955, William
Royer vacated the premises.

Plaintiffs' contend defendants were not deprived
of the beneficial use and enjoyment of the premises
by the failure of plaintiffs to purchase the storage
tanks, therefore, defendants should be liable for
the rent.

Defendants allege they were constructively evicted
and, therefore, are not liable for the rent.

The trial court found as a matter of fact from the disputed testimony that at Speedway's insistence Mary Alice Royer had the clause whereby the plaintiff lessors agreed to purchase the storage tanks added to the lease. The trial court further found the parties to the lease knew the premises were to be used for the sale of gasoline and oil products and for the sale of used automobiles.

Plaintiff Frank J. Karpp testified that both Mary Alice Royer and her husband, E. W. Royer, were present when the lease was signed. Defendants' witnesses testified to the contrary. The trial court found E. W. Royer was not present at any of the preliminary discussions nor at the time the lease was executed. The court also found that the Speedway representative contacted plaintiff Frank J. Karpp personally and suggested to him that it would not continue putting its gasoline in the tanks unless the plaintiffs purchased these tanks from Sun Oil Company.

The trial court further found as a matter of fact that Speedway did not execute the contract for supplying gasoline to Mary Alice Royer until it was assured that plaintiffs were obligated to purchase the underground tanks. The court found there was pressure put on both plaintiffs and defendants to have this inserted clause of the lease carried out. Sun Oil Company was threatening to either fill the tanks with sand or pull them, and Speedway was threatening to stop deliveries unless they could deliver to tanks other than those owned by Sun Oil. The court made a finding the landlords' breach of the lease agreement gave the tenant the right to vacate the premises without further obligation as to rent, since the premises were to be used for a specific purpose and the fulfillment of the landlords' promise was necessary to have the premises usable for that specific purpose.

Here we do not have the question of an implied covenant. We have a written covenant made by the lessors expressly agreeing that the purchase of the tanks would be made. A reasonable time in which to purchase them had passed. Deprivation of the beneficial use and enjoyment of leased premises as a result of the breach of a material covenant has been held to be sufficient to justify the abandonment of the premises by a tenant, particularly where, after notice, a reasonable time to remedy the defect has been given the landlord. Thus, in *Rogers* v. *Babcock,* 139 Mich 94, it was held that a tenant relieves himself from obligation to pay further rent by abandoning the leased premises for the failure of the landlord to install a furnace according to covenant. In *Lynder* v. *S. S. Kresge Co.,* 329 Mich 359 (28 ALR 2d 440), it was held that the failure of a landlord to carry out a covenant to repair set forth in a written lease constituted a constructive eviction justifying abandonment of the premises by the tenant.

The trial court correctly arrived at the law with reference to the facts in this particular case. The record is replete with evidence from which the lower court could find plaintiffs knew of their obligation to purchase the tanks. During the trial plaintiff Frank J. Karpp was asked the following questions and gave the following answers:

"*Q.* Now, during the course of the lease with the defendants, were there any conditions that you were required to perform that were not performed at the time of or during the course of their possession under the lease?

"*A.* No, only on the negotiation with Sun Oil on the tanks, and that hadn't been completed yet, because I wanted to wait and see for sure if he was going to stay 6 months, because if he didn't stay 6 months it wouldn't be profitable to own the tanks.
\* \* \*

"*Q.* All right. Now, you didn't reserve the right to wait 6 months of the time of the lease to buy these tanks, did you?

"*A.* No.

"*Q.* In other words, you stated that day that you would get those tanks, did you not?

"*A.* Yes."

The testimony was in dispute as to whether or not Sun Oil Company and Speedway contacted plaintiffs with respect to what they proposed to do in the event plaintiffs failed to buy the tanks. Certainly there was testimony from which the court could find that plaintiffs had this notice. We do not reverse with reference to findings of fact in a law case where the trial court decides disputed testimony, unless it can be said that the testimony clearly preponderates against the judgment of the lower court. *Insealator, Inc.,* v. *Wallace,* 357 Mich 233; *Harden* v. *Widovich,* 359 Mich 566. We cannot say upon this record that that is true.

The judgment of the trial court is affirmed. Defendants shall have costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.