# STATE OF MICHIGAN

# COURT OF APPEALS

CARO TRANS OPPORTUNITIES LLC,

       Plaintiff-Appellant,

v

MOBILE MEDICAL RESPONSE, INC.,

       Defendant-Appellee.

UNPUBLISHED
June 14, 2018

No. 337074
Tuscola Circuit Court
LC No. 15-029087-CK

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

GLEICHER, J. (*dissenting*).

Two parties signed a lease. Each maintains that the other breached a provision of the lease. Both sought summary disposition, insisting that the other committed the *first* breach. The majority holds that one party, plaintiff Caro Trans Opportunities LLC, breached first because its conduct "obstructed, interfered with, and substantially failed to provide . . . the beneficial use of the leasehold." This conclusion incorporates two intrinsically factual determinations: that Caro Trans committed the initial transgression and that its breach qualified as substantial. Finding facts is forbidden in summary disposition analysis. Because this case is replete with genuine issues of material fact, I respectfully dissent.

I

Caro Trans agreed to build out premises for Mobile Medical Response, Inc. (MMR) to use as an ambulance facility. As consideration for the build-out, Caro Trans agreed to rent the premises to MMR for five years at a base rate of $2,822.67 per month. "As additional consideration," the 2015 lease provides, MMR "is conveying by warranty deed" a separate piece of property on Caro Road. The conveyance resulted in a rent credit of $1,083.33 per month, lowering the monthly base rent to $1,739.34. The specific language of this provision states:

> 5b. MMR Rent Credit. As additional consideration for this lease agreement, Tenant is conveying by warranty deed, property located at 1162 N. Caro Rd, Caro, MI ("Conveyed Property") to Landlord. The parties agree that the Conveyed Property is deemed to have a fair market value of $65,000 and that Tenant shall receive a rent credit of $1,083.33 per month during the term of the lease until the credit has been fully expended after 60 months. **In the event of a default, abandonment or termination of the lease by Tenant, there will be no cash value rebated to Tenant for any unused portion of the rent credit.**

-1-

Closing costs for revenue stamps/transfer taxes and title insurance policy in the name of Landlord shall be paid by Tenant. [Emphasis added.]

Paragraph 14 of the lease provides, "The Tenant's execution of this Lease shall constitute an acknowledgement by Tenant that the Premises are then in acceptable condition."[1]

The parties agree that MMR moved in on a date "early in August." Before moving in, MMR did not convey the Caro Road property. Nor did it convey the property after embarking on its tenancy. On August 28, 2015, the Tuscola County building inspector issued a certificate of occupancy for the premises. He agreed at his deposition that on that date, the premises were "good to go and it could be occupied." MMR paid the first month's rent on September 11, 2015, and deducted the rent credit for the Caro Road property. But it still did not convey the Caro Road property.

Before the certificate of occupancy was issued but after MMR had moved in, MMR began to complain about defects on the premises—a leaky roof, a defective garage door, faulty breakers, a leaky water heater line, and improper septic system drainage. Ultimately these complaints and others led the building inspector to revoke the certificate of occupancy on September 15. By then, MMR had occupied the premises for approximately six weeks.

Caro Trans made repairs to the building and the inspector reissued the certificate of occupancy two weeks later, on October 1, 2015. MMR did not move back into the building and did not transfer the Caro Road property. Instead, it unilaterally rescinded the lease.

Caro Trans filed this action asserting breach of contract and equitable claims. Following discovery, both parties moved for summary disposition, claiming the other had committed the first breach. The circuit court found that Caro Trans had materially breached the lease and had "unclean hands," thereby barring it from enforcing the provision of the lease requiring a transfer of the Caro Road property.

II

According to the majority, Caro Trans committed the first breach of the lease, which justified MMR's rescission and its unilateral termination of its contractual obligations. In reaching this conclusion, the majority specifically acknowledges—and relies on—two legal

---

[1] This case arises from the 2015 lease, not the 2014 lease. The majority finds significance in the fact that the 2014 lease contained the same paragraph, but Caro Trans never sued to enforce it. The parties mutually decided that Caro Trans would build out and rent a different structure. The majority has not explained why Caro Trans' decision to forbear legal enforcement of a provision in a contract that the parties agreeably invalidated has any relevance. I know of no legal principle equating forbearance from suit under one contract with a waiver of a subsequent breach under another, and the majority has not proposed one. And in any case, our Supreme Court has firmly rejected such a notion: "Mere forbearance does not of itself constitute a waiver." *Singer v Hoffman Cake Co*, 281 Mich 371, 374; 275 NW 177 (1937).

principles: (1) unless a time is stated in the contract, a reasonable time for performance is implied, and (2) a party's substantial breach of a contractual obligation may warrant rescission. Both principles guide an analysis of "who breached first," the central question in this case. Both turn on factual determinations that must be made by a jury, and not on summary disposition.[2]

The first principle governs our interpretation of the lease paragraph concerning transfer of the Caro Road property—"As additional consideration for this lease agreement, Tenant is conveying by warranty deed, property located at 1162 N. Caro Rd, Caro, MI . . . to Landlord." The parties dispute whether this language required MMR to transfer the property at the time the lease was signed, or at some later point. The majority correctly recites that when a contract is silent as to the time of a term's performance, the law presumes that the parties intended a reasonable time. This bedrock principle of contract law is well established in Michigan's jurisprudence. Our Supreme Court first acknowledged it in 1863: "And when no time is specified for the performance of such act or contract in the agreement itself, the law steps in and requires it to be performed within a reasonable time." *Byram v Gordon*, 11 Mich 531, 534-535 (1863). Almost 100 years later, the Supreme Court reaffirmed the principle: "[W]hen a contract is silent as to time of performance or payment, absent any expression of a contrary intent, the law will presume a reasonable time." *Duke v Miller*, 355 Mich 540, 543; 94 NW2d 819 (1959).

Equally well established is that determining a "reasonable time" inherently involves finding facts. As a general proposition, the "reasonableness" of a party's conduct presents a jury question. That principal governs "reasonable time" judgments in contract cases. Justice Campbell highlighted the factually intense nature of the inquiry in 1868:

> When a contract is to be performed within a reasonable time, the law implies that the parties contract in view of all the pertinent facts that may be mutually known to them, and it requires them to exercise such reasonable diligence as under all then and subsequently existing circumstances might be fairly expected. When a court or jury is called upon to decide whether they have complied with what might have been reasonably expected, there must be proof of such facts as will show what ought to have been done. [*Stange v Wilson*, 17 Mich 342, 348 (1868).]

Nothing has changed in the interim. "What constitutes a 'reasonable time' under the terms and circumstances of a contract is a question of fact." *Walter Toebe & Co v Dep't of State Highways*, 144 Mich App 21, 31; 373 NW2d 233 (1985). See also Justice Young's concurring opinion in *Jackson v Green Estate*, 484 Mich 209, 217; 771 NW2d 675 (2009), which involved, analogously, the time for repayment of a loan under a contract, also governed by a "reasonable time" standard: "Determining what constitutes a reasonable amount of time to request payment of a loan is *necessarily* a factual question properly decided by the jury." *Id*. (emphasis added).[3]

---

[2] Both parties demanded a jury trial.

[3] The majority mentions without further elucidation that both parties requested summary disposition, and that neither contends that a fact question exists. This means that when evaluating each motion, we construe the facts and reasonable inferences in the light most

-3-

The majority and I agree that MMR was required to transfer the Caro Road property to Caro Trans within a reasonable time after signing the lease. But how much time was reasonable? Should the transfer have occurred on signing? The word "is" in the conveyance sentence would seem to point in that direction. Or does that sentence mean that the transfer was to occur at the moment of initial occupancy? Perhaps a reasonable time was when MMR made its first discounted rent payment. MMR's deduction of the rent credit supports an argument that the land transfer should have been made by then, at the latest. The point is that the timing of MMR's duty to transfer the property revolves around the concept of reasonableness, and reasonableness determinations are inherently fact specific. Here, the facts suggest several points in time at which the property transfer would have been reasonable.

The majority denies that it has engaged in fact-finding, claiming that "plaintiff presented no evidence that would allow reasonable minds to differ about whether defendant was required to convey the property before plaintiff's breach." But summary disposition is appropriate only when the evidence is so one-sided that the moving party must prevail as a matter of law. This is far from such a case. Viewed in the light most favorable to Caro Trans, it conveyed habitable premises that MMR occupied for six weeks, paying a reduced rental price for property that it failed to transfer. Sometime during those six weeks, I suggest, it would have been reasonable for MMR to convey the warranty deed, as it had promised to do in exchange "for the lease agreement." The majority ignores this rational view of the evidence. Its decision inherently and improperly encapsulates findings of fact that (1) Caro materially breached the contract, despite the certificate of occupancy that had been issued before MMR took possession, (2) the breach was material, despite that the conditions were rectified in short order, and (3) Caro's breach occurred before the "reasonable time" afforded MMR for performance. The majority's unwillingness to own up to its fact-finding does not erase the portions of the record the majority finds inconvenient. Determining a reasonable time for MMR's performance under the lease is

---

favorable to the nonmoving party, crediting that party's evidence without weighing it. This is not a semantic exercise, but a key component of our role. Had the parties *truly* agreed that no fact questions existed, they would have so stipulated. MCR 2.116(A). See also *BF Goodrich Co v US Filter Corp*, 245 F3d 587, 593 (CA 6, 2001):

> It was not necessary for the district court to resolve the case at summary judgment solely because the parties filed cross-motions for summary judgment and presented a Joint Statement of Undisputed Material Facts. When parties file cross-motions for summary judgment, "the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." 10A [Wright, Miller & Kane, Federal Practice & Procedure, § 2720 (3d ed, 1998).] A trial court may conclude, when reviewing the undisputed material facts agreed upon by the parties and drawing all inferences, in turn, for the non-moving party, that a genuine issue exists as to those material facts, in which case the court is not permitted to resolve the matter, but rather, must allow the case to proceed to trial.

critical to the rest of the case, because MMR's defense rests on the argument that Caro Trans breached first. In other words, MMR excuses its failure to abide by paragraph 5b of the lease on the ground that Caro Trans's initial breach excused MMR's nonperformance.

Sitting as jurors, the majority finds that Caro Trans committed the first breach, positing, "The evidence presented to the trial court established that upon taking possession of the property, [MMR] discovered serious defects, including roof leaks, electrical hazards, and a malfunctioning toilet and septic system." I respectfully disagree that the evidence "established" this proposition, or that these defects were substantial as a matter of law. The record facts conflict regarding when MMR discovered the defects and whether those defects rendered further performance under the lease impossible. And whether the existence of the defects preceded a "reasonable time" for transfer of the Caro Road property is a material and disputed fact.

The "first substantial breach" rule provides, "He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 573; 127 NW2d 340 (1964) (quotation marks and citation omitted). A "substantial breach" is one that "effect[s] such a change in essential operative elements of the contract that further performance by the other party is thereby ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *Id*. at 574 (citations omitted). But a partial failure to comply with the terms of a contract is not necessarily a substantial breach. *Rosenthal v Triangle Dev Co*, 261 Mich 462, 463; 246 NW 182 (1933). And whether a substantial breach changes the "essential operative elements of the contract" thereby making performance impossible is question for a fact-finder. *Baith v Knapp-Stiles, Inc*, 380 Mich 119, 126-127; 156 NW2d 575 (1968) (quotation marks and citation omitted). The federal Court of Appeals for the Sixth Circuit has observed, "Michigan case law indicates that the determination of which breaches are 'substantial' is inextricably tied to the particular facts of the case." *Chrysler Int'l Corp v Cherokee Export Co*, 134 F3d 738, 742 (CA 6, 1998).

Did Caro Trans substantially breach the lease? Answering this question requires fact-finding. As a starting point, the record conflicts as to whether the defects MMR claimed were actually *substantial*. Given that the defects were rapidly repaired and a new certificate of occupancy issued within two weeks after MMR moved out, it is at least arguable that the defects were not substantial. Certainly Caro Trans has the right to argue to a jury that the defects identified by MMR did not render MMR's performance under the contract "ineffective or impossible." *McCarty*, 372 Mich at 574. Although the majority claims that "upon taking possession of the premises" MMR discovered significant defects rendering the building uninhabitable, the record simply does not support his claim. The first certificate of occupancy was issued on August 28, at least two weeks after MMR moved in. Two weeks after that, MMR made a rent payment. These facts establish a material question as to when Caro Trans breached—on delivery of the premises, or later, by failing to timely repair once defects were brought to its attention. The same facts give rise to an inference (and therefore a material question) regarding whether the defects were substantial.

And what about the lease provision stating, "The Tenant's execution of this Lease shall constitute an acknowledgement by Tenant that the Premises are then in acceptable condition"? Does the fact that MMR signed the lease mean that when it took possession, the premises were in

-5-

habitable condition? If so, the breach that followed involved a failure to repair. In that circumstance, the law assumes that the lessor would have a reasonable time to remedy any defects. See *Karpp v Royer*, 362 Mich 64, 68; 106 NW2d 244 (1960).

Whether the lease was breached, by whom and when, are subject to reasonable debate in this case. "[I]f reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). A judge evaluating summary disposition is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v Liberty Lobby, Inc*, 477 US 242, 249; 106 S Ct 2505; 92 L Ed 2d 202 (1986). In deciding which breaches could have been remedied and which could not, and in determining whether a breach was substantial, the majority has usurped the fact-finder's role. I would reverse and remand for a trial.

/s/ Elizabeth L. Gleicher