McCARTY *v.* MERCURY METALCRAFT COMPANY.

1. CONTRACTS—SALES ENGINEER—LATER AMENDMENT OF PURCHASE ORDERS.

Amendments to purchase orders of defendant's products that were later accepted by defendant *held,* not to alter the effect of sales engineer's contract with defendant manufacturer on payment of commissions for procurement of orders accepted by defendant within the term of the contract.

2. SAME—SUDDEN TERMINATION—BREACH OF CONTRACT.

The plaintiff's immediate termination of his contract as sales engineer for defendant manufacturer constituted a breach of the contract which included a provision for 60 days' notice of termination.

3. SAME—BREACH OF CONTRACT—FAILURE OF CONSIDERATION—PREVENTION OF FURTHER PERFORMANCE.

The general rule that he who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform is limited to where the first breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as causing a complete failure of consideration or the prevention of further performance by the other party.

4. SAME—SUDDEN TERMINATION—BREACH OF CONTRACT.

Plaintiff sales engineer's sudden termination of contract providing for 60 days' notice of termination *held,* not to amount to

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur 2d, Agency § 247.
[2, 4] 35 Am Jur, Master and Servant § 27.
[3] 12 Am Jur, Contracts § 386; 35 Am Jur, Master and Servant § 12.
[5] 12 Am Jur, Contracts § 5.
[6, 8, 9] 12 Am Jur, Contracts § 65.
[7] 20 Am Jur, Evidence § 1157.
[10, 11] 12 Am Jur, Contracts § 428.
[12] 5 Am Jur 2d, Appeal and Error § 839.
[13] 5 Am Jur 2d, Appeal and Error § 974.
[14] 14 Am Jur, Costs § 95.

so substantial a breach as to preclude his recovery for commissions on orders procured by him during the term of the contract.

5. Same—Sales Engineer's Expenses—Assumption by Manufacturer.

Defendant manufacturer's claim in its cross declaration for reimbursement for expenses for use of office, telephone, gasoline and oil which plaintiff sales engineer had incurred during term of contract, were properly disallowed in nonjury action for unpaid commissions, notwithstanding specific provision of contract that plaintiff's expenses should be his own responsibility, where evidence shows defendant had paid and assumed such expenses, it having deducted them on its Federal income tax returns.

6. Same—Latent Ambiguity—Extrinsic Evidence.

Extrinsic evidence is admissible to indicate the actual intent as an aid to the construction of a contract containing a latent ambiguity.

7. Same—Latent Ambiguity.

A latent ambiguity in a contract is one where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among 2 or more possible meanings.

8. Same—Latent Ambiguity—Extrinsic Evidence.

Extrinsic evidence is admissible to prove the existence of a latent ambiguity in a contract, as well as to resolve any ambiguity proven to exist.

9. Same—Ambiguity—Extrinsic Evidence—Construction of All Orders.

The trial court's rejection of testimony introduced in nonjury case to solve an ambiguity was not error where the evidence was such that he could, and did, find there was no ambiguity in provision of sales engineer's contract for commissions on "all orders" accepted by defendant manufacturer rather than prototype orders as distinguished from production orders which latter type defendant reluctantly accepted to accommodate customers.

10. Same—Oral Modification of Written Contract—Consideration.

Proof of consideration for a subsequent oral agreement allegedly modifying a written contract is not necessary if the parties

considered it to their advantage to depart from strict per-
formance of the agreement, hence, trial court's ruling that
written contract had not been modified by subsequent oral
agreement because no consideration for the later agreement
had been proved was for an erroneous reason.

11. SAME—ORAL MODIFICATION OF WRITTEN CONTRACT—MUTUAL AS-
SENT—EVIDENCE.

There must be proof of mutual assent in order to establish that
an oral agreement has modified a written undertaking.

12. APPEAL AND ERROR—NONJURY LAW .CASES—ISSUES OF FACT.

Controverted issues of fact in a nonjury law case are not re-
viewed by the Supreme Court as if it were in equity, and
trial court's decision on a question of fact will not be dis-
turbed, where the evidence does not preponderate against the
finding.

13. SAME—NONJURY CASE—REMAND FOR RESOLUTION OF UNSETTLED
QUESTION—ORAL MODIFICATION OF WRITTEN CONTRACT—BURDEN OF
PROOF.

Nonjury action by sales engineer against manufacturer for com-
missions due on sales made during term of contract is remanded
for determination by trial court on record made as to whether
or not there had been established by mutual assent an oral
modification of written contract relative to .commissions, where
such ·essential determination has not been made; judgment
being affirmed after remand, where trial court then found
defendant had not sustained its burden of proof as to the
subsequent oral agreement.

14. COSTS—REMAND FOR ADDITIONAL DETERMINATION ON RECORD ES-
TABLISHED.

Costs of Supreme Court and of trial court are ordered taxed ac-
cording to the final result, where nonjury case is ordered re-
manded for determination of whether an oral modification to
written contract had been established under record already
established; costs being accorded plaintiff on affirmance after
remand.

Appeal from Macomb; Deneweth, Jr. (George R.),
J. Submitted October 10, 1963. (Calendar No. 31,
Docket No. 49,650.) Decided April 6, 1964.

Assumpsit by Joseph O. McCarty against Mercury
Metalcraft. Company, a Michigan corporation, for
salesman's commissions. Cross declaration for re-

imbursement of expense items. Judgment for plaintiff. Defendant appeals. Affirmed in part and remanded for supplemental opinion. Supplemental opinion of trial court filed. Case affirmed in the entirety, September 2, 1964.

*Kenneth N. Kramer* and *Letzer & Letzer,* for plaintiff.

*Cass S. Jaros* and *Marjorie S. Jaros,* for defendant.

KAVANAGH, C. J. Plaintiff sued defendant for unpaid commissions allegedly due plaintiff for services performed under a sales contract with defendant. Defendant filed a cross declaration for reimbursement of expenses, incurred by plaintiff and paid by defendant, the payment of which was allegedly the obligation of plaintiff under said contract. After trial of the case to the circuit court without a jury, the court ordered judgment for plaintiff in substantially the amount claimed and dismissal of defendant's cross claim. From denial of defendant's motion for a new trial on both the declaration and cross declaration, defendant appeals.

On December 5, 1958, the parties executed a contract, effective retroactively from October 30, 1958, which provided for the representation of defendant manufacturing company by plaintiff as a sales engineer. The contract, found by the lower court as controlling the disputed relationship of the parties, contained the following provisions pertinent to issues arising from plaintiff's declaration:

(1) The plaintiff was authorized to solicit orders from any firms except 4 specific firms, among which were Chrysler Engineering Division, Highland Park, Michigan, and Chrysler Missile Operations, Van Dyke, Michigan.

(2) Defendant would pay plaintiff a 5% commission on all orders secured by plaintiff and accepted by defendant, payment of said commission to be made on the first of the month following receipt by defendant of payment for any such orders.

(3) Cancellation of the contract could be effected by either party by written notice to the other party 60 days before cancellation date, and defendant was to pay plaintiff commissions due on all orders accepted before date of cancellation.

The issue raised by defendant's cross declaration, in regard to responsibility of plaintiff's expenses, is governed by the following paragraph of the contract:

"It is understood your [plaintiff's] expenses shall be your own responsibility. Should you feel any situation warrants an exception, your requests will be given due consideration. Unless we [defendant] have given authority to the contrary on such specific requests, however, we will not assume or pay any of your items of expense."

The last paragraph of the contract provided that no further agreements between the parties would be binding unless in writing.

Pursuant to the contract, plaintiff solicited certain orders and was paid commissions thereon. Because plaintiff's income from these commissions was quite meager for the first few months during which the contract was in effect, defendant established for him a drawing account of $50 per week, chargeable against his commission earnings. The amounts drawn were always deducted from commission payments. Defendant also permitted plaintiff to use office space and telephone and authorized an automobile service station to allow plaintiff to charge gasoline and oil to defendant's account. The expenses incurred in connection with plaintiff's use of office, telephone, gasoline and oil were paid by

the defendant and, unlike the drawing account funds, were never deducted from commission earnings nor ever requested to be reimbursed until the filing of defendant's cross declaration. In fact, the general manager of defendant company testified that reimbursement would not have been requested had plaintiff not instituted this suit.

The purchase orders for which plaintiff was awarded commissions by the trial court were admittedly procured by plaintiff and accepted by defendant during the term of the contract, and the fact that amendments to the purchase orders were later accepted by defendant does not alter the effect of the contract on payment of commissions for procurement of orders accepted within the term.

Plaintiff admits that the orders in question were for "production" items rather than "prototype" items, and that these orders were accepted by defendant with reluctance, caused by the fact that defendant's operational facilities were more suited to the handling of low-volume, high-accuracy "prototype" work than of high-volume, low-accuracy "production" projects. Defendant's general manager testified that this reluctance was overcome "initially" by the desirability of accepting the orders "as a customer service." He further testified that "we were in a position where we couldn't refuse to accept them without jeopardizing our position in future business."

The problem created by this situation is whether the agreement between the parties called for commissions to be paid to plaintiff for such "production" orders. The written contract nowhere classified the orders governed thereby, and, in fact, declared that commissions would be paid on "all orders secured by you [plaintiff] and accepted by us [defendant]." Defendant contends, however, that the written contract should not be construed strictly literally on

this point, since, defendant alleges, at the time of execution the parties understood it to mean all "prototype" orders, to the exclusion of "production" orders, and that plaintiff was compensated for the orders in question through a later agreement providing for payment of commissions on orders specifically excepted from the written contract, namely, Chrysler Engineering and Chrysler Missile orders.

Plaintiff contends, on the other hand, that the words "all orders" are to be construed literally, because that was the intent of the parties at time of execution and because the contract was drawn by defendant, against whom its wording should, therefore, be construed strictly. Plaintiff further points to the fact that the Chrysler account commissions were first paid to him long before the "production" orders came into controversy, and alleges that the payment of the Chrysler account commissions was rather another attempt by defendant to provide adequate compensation to plaintiff.

On July 18, 1960, plaintiff terminated the contract by sending to defendant written notice thereof, effective immediately. Since the contract provided for 60 days' notice of termination, the premature termination constituted breach of the contract. Defendant pleaded this breach as a bar to plaintiff's suit. The trial court ruled that since defendant's proper remedy for breach was a claim for damages thereon, the absence of such a claim made the breach immaterial to determination of the issues actually raised. Defendant contends on appeal that the trial court erred in so ruling, and attempts to support this position by citing *Jones* v. *Berkey,* 181 Mich 472, which adopted this general rule (p 480):

"'He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform.'"

That case and this Court's other decisions on that point indicate that the words "substantial breach" in the ruling must be given close scrutiny. Such scrutiny discloses that the application of such a rule can be found only in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration (*Kunzie* v. *Nibblelink,* 199 Mich 308) or the prevention of further performance by the other party (*Stahelin* v. *Sowle,* 87 Mich 124)..

Since the present case does not involve a contract wherein time is of the essence, the breach found in the sudden termination does not affect an element so essential as to amount to a breach which is contemplated by the rule as "substantial." Therefore,. the rule of the *Jones Case* does not bar the present plaintiff's suit.

Defendant contends further that the trial court erred in denying defendant's cross claim for reimbursement of expenses incurred by plaintiff and paid by defendant. The item of plaintiff's expenses was covered by the contract clause quoted above and repeated for convenience here:

"It is understood your [plaintiff's] expenses shall be your own responsibility. Should you feel any situation warrants an exception, your requests will be given due consideration. Unless we [defendant] have given authority to the contrary on such specific requests, however, we will not assume or pay any of your items of expense."

The testimony indicates, as stated above, that the items of expense involved were paid by defendant. From the undisputed facts that defendant did not deduct these expenses from plaintiff's commission earnings as it did the drawing account amounts,

and that defendant did deduct the expenses on its Federal income tax returns, it could reasonably be inferred that defendant assumed these expenses.

In view of the above-quoted provision of the contract, we think the trial court could properly conclude that defendant, in paying and assuming the expenses, did by those very acts give "authority to the contrary," and thereby relieved plaintiff of the responsibility for payment of the expense items in question. Therefore, the trial court did not err in dismissing defendant's cross claim for reimbursement of these expenses.

In regard to the trial court's determination that defendant is liable for commissions claimed by plaintiff to be due him under the contract, defendant on appeal assigns error to the court's denial of 2 avenues of defense: (1) that the contract terms involved were ambiguous and that, therefore, the intent of the parties at the time of execution, as this intent is shown by the circumstances surrounding execution, should control; and (2) that the written contract was subsequently modified by an oral agreement between the parties.

Defendant correctly contends that where a latent ambiguity exists in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties as an aid to the construction of the contract.

A latent ambiguity is one "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among 2 or more possible meanings." Black's Law Dictionary (4th ed), p 105. Since the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist.

On his closing argument, at the hearing on his motion for a new trial, and in his argument before this Court, the defendant has contended plaintiff's testimony indicated "unequivocally" that plaintiff understood the contract to cover "prototype" orders only, in accord with defendant's alleged understanding. It is this alleged mutual understanding which defendant claims so conflicts with the literal construction of the contract, which stated "all orders," that the conflict indicates the existence of a latent ambiguity. In his opinion on the motion for a new trial, the trial court indicated that he found no such ambiguity, presumably because he found plaintiff's testimony not so unequivocally in agreement with defendant's in regard to the meaning of the term "all orders." We think such a finding of fact could reasonably have been made from the testimony adduced. Since the trial court reasonably exercised its discretion in finding that no ambiguity existed, there was no error in the trial court's ignoring of the testimony introduced to solve the nonexistent ambiguity.

In defense to its claimed liability, defendant also affirmatively offered proofs of the existence of a subsequent oral agreement modifying the written contract. In his written opinion after trial, the court ruled that defendant had not sustained its burden of proving the existence of the oral contract. The insufficiency found by the court was, however, in regard to the proof of the consideration necessary for the existence of the oral contract. This Court has held that proof of consideration for a subsequent oral agreement allegedly modifying a written contract is not necessary, because "if the parties considered it to their advantage to depart from strict performance of the agreement, that would constitute a sufficient consideration." *Jacob* v. *Cummings*, 213 Mich 373,

378. Therefore, the trial court denied the existence of the oral agreement for an erroneous reason.

The trial court did not make a finding, however, as to whether the defendant sustained its burden of proof of the element which must be proved to establish the existence of the oral agreement, namely, mutual assent. This Court, in reviewing controverted issues of fact in a law case tried without a jury, does not consider the case *de novo* as if it were in equity. *Schneider* v. *Pomerville*, 348 Mich 49. Accordingly, following to some extent the *Schneider Case* provision for remand, this case is remanded to the circuit court. for determination, by supplemental opinion to be filed, on the record as already established, of the essential question of whether defendant sustained its burden of proof as to the existence of the oral contract. "In exceptional cases brought here under Court Rule No 64 [1945], and this case is deemed such an exception, we may remand for essential determination of unsettled or overlooked questions of fact." *Schneider* v. *Pomerville, supra,* pp 58, 59.

The judgment of the lower court is affirmed in its dismissal of defendant's cross claim. The case is remanded only for the determination indicated above. GCR 1963, 810.

Costs of this Court, and of the trial court, will be taxed according to the final result.

Dethmers, Kelly, Black, Souris, Smith, and O'Hara, JJ., concurred.

Adams, J., took no part in the decision of this case.

### On Remand.

Kavanagh, C. J. Under date of August 5, 1964, pursuant to remand, the trial court made a determination as a matter of fact from conflicting testimony that defendant had not sustained its burden of proof as to the subsequent oral agreement. Since the evidence in this, a law case tried to the court without a jury, does not preponderate against that finding, we will not disturb it. *Firemen's Insurance Co.* v. *Sterling Coal Co.,* 348 Mich 564; *In re Karch's Estate,* 311 Mich 158.

The judgment of the lower court is affirmed in the entirety. Plaintiff shall have costs.

Dethmers, Kelly, Black, Souris, Smith, and O'Hara, JJ., concurred.

Adams, J., took no part in the decision of this case after remand.