# STATE OF MICHIGAN

# COURT OF APPEALS

JACQUELINE NOWICKI-HOCKEY,

Plaintiff-Appellant,

v

BANK OF AMERICA,

Defendant-Appellee.

UNPUBLISHED
June 29, 2017

No. 331584
Montmorency Circuit Court
LC No. 11-002674-CH

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

PER CURIAM.

Under Michigan law, a party who commits the first substantial breach of contract and renders the other party's subsequent performance impossible may not file suit challenging the other party's breach. The circuit court in this case summarily dismissed plaintiff Jacqueline Nowicki-Hockey's breach of contract action against defendant Bank of America after concluding that her April 2005 missed mortgage payment was the first established substantial breach. However, plaintiff presented voluminous evidence supporting her claim that Bank of America and its predecessors committed the first substantial breach sometime between 1999 and 2002 by failing to apply her payments as provided in the contract, resulting in a false default. This evidence created a triable issue. We vacate and remand for further proceedings.

## I. BACKGROUND

Plaintiff and her now ex-husband purchased a Northern Michigan retirement home in 1993, using the proceeds of a mortgage loan secured through First America Bank. The Nowickis refinanced with Standard Federal Bank in 1996. At that time, they had a principal balance of $45,750. The loan carried a 7.375% interest rate. In addition to funds being allotted to principal and interest, the Nowickis' $315.98 monthly payment would also be applied to the escrow of property taxes and insurance premiums. The Nowickis were required to make their payment by the first of each month. The lender, in turn, was required to divide and apply the payments in a specific order: (1) prepayment charges, (2) taxes and insurance, (3) interest, (4) principal, and (5) late charges. The failure to timely make full mortgage payments would result in the Nowickis' default. In the event of default, the lender was required to notify the Nowickis that their failure to pay any overdue amount by a certain date could result in acceleration of the loan. The lender was also required to notify the Nowickis in the event it invoked the power of sale, i.e. foreclosure. The mortgage note provided the Nowickis the right to forestall a sale by paying the

-1-

amount due and owing "as if no acceleration had occurred," curing any default, and paying the bank's costs.

The Nowickis divorced in 2000, Mr. Nowicki quit-claimed the property to plaintiff, and she took sole responsibility for the remaining debt. In the years following, plaintiff's mortgage changed hands several times. When ABN AMRO took over as servicer in 1999, negligent accounting practices on the lenders' parts led it to believe that plaintiff had paid off her mortgage obligation. Plaintiff claims that ABN AMRO continued this trend of lax accounting, repeatedly failing to timely and properly post and credit her payments. As a result of these errors, plaintiff claims that subsequently ABN AMRO mistakenly determined that she was in default. Despite believing that the lender's collection actions were baseless, plaintiff entered into a forbearance agreement in 2002 reciting a balance due of $47,624.13, and then agreed to three loan repayment plans to avoid foreclosure of her retirement home. Under these plans, plaintiff made several lump sum payments and undertook ever increasing monthly obligations. By October 2006, her $315 monthly obligation had risen to $820.98.

It appears that Bank of America (BOA) took over servicing the loan in 2006. Records created by BOA breaking down transactions from January 2006 through December 2010, reveal that the bank repeatedly failed to apply the totality of payments made by plaintiff to reduce her debt. Essentially, funds were left hanging in limbo and not applied toward principal, interest, taxes, or insurance. At the same time, BOA monthly charged a late fee against plaintiff's account. It also "reversed" several of plaintiff's payments, returning them to sender without applying them. Plaintiff presented a report prepared by a CPA attesting that as a result of these accounting errors, BOA failed to acknowledge that plaintiff paid off her mortgage loan in April 2008. Indeed, the CPA opines, plaintiff has since overpaid more than $11,000 toward extinguishing the lien on her property.

Ultimately, BOA "declared a default," "invoked the power of sale" under the mortgage, and scheduled a sheriff's sale for January 6, 2011. Plaintiff filed suit and quickly secured a temporary restraining order to prevent the sale. The matter was thereafter delayed while BOA removed the case to federal court only to be sent back to state court by the Court of Appeals for the Sixth Circuit. Upon the matter's return to state court, plaintiff filed an amended complaint, accusing BOA of breaching their contract "by failing to post and credit [her] payments in a manner consistent with the recorded mortgage and/or other recorded documents and/or note" and by "revers[ing her] payments . . . without legal authority to do so."[1]

In lieu of filing an answer, BOA sought summary disposition. BOA contended that no admissible evidence established its alleged contractual breaches. To the contrary, BOA insisted, plaintiff's proffered evidence actually revealed that she had failed to make timely payments on at least 15 occasions, breaching the contract. As the party who committed the first substantial breach, plaintiff could not maintain a breach of contract action against BOA for its subsequent

---

[1] Plaintiff raised several other counts, such as fraud, conversion, and intentional and negligent infliction of emotional distress. However, she does not attempt to revive those claims through this appeal.

failure to perform. Plaintiff retorted that BOA had committed the first substantial breach as its accounting errors falsely depicting plaintiff's default predated any late or missed payment on her part.

In dismissing plaintiff's action, the court reasoned that the case "revolve[d] around one basic issue: Whether or not plaintiff has paid off her mortgage." Plaintiff had not paid off her mortgage debt in the court's estimation because:

> (1) plaintiff executed a loan modification agreement on September 1, 2002, acknowledging that the principal balance owed on the subject loan was $47,624.13; (2) plaintiff failed to provide any evidence to support 41 claimed payments; (3) [BOA], and its predecessors, have made all insurance and tax payments for the property since September 1, 2002, resulting in $10,679.17 in unpaid escrow expenses; and (4) in connection with plaintiff's defaults, [BOA], and its predecessors, incurred attorneys' fees in the amount of $3,765.47 in March 2005, and $4,981.18 in September 2006.

The court rejected the report prepared by plaintiff's CPA as incomplete and "insufficient to establish any material question of fact." The court determined that plaintiff was the first to substantially breach the contract by failing to make her April 2005 payment, as well as four others and making 10 late payments, precluding her pursuance of a breach of contract action against BOA.

Plaintiff appeals.

## II. ANALYSIS

"We review a trial court's decision on a motion for summary disposition de novo." *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 243; 704 NW2d 117 (2005).

> A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).]

We also review de novo issues of contractual interpretation. *Holmes v Holmes*, 281 Mich App 575, 587; 760 NW2d 300 (2008). In doing so, we must determine the contracting parties' intent by enforcing the contract's plain and unambiguous language. *Barclae v Zarb*, 300 Mich App 455, 485; 834 NW2d 100 (2013).

-3-

The circuit court dismissed plaintiff's case based on the "first substantial breach" rule. Under that rule, "He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 573; 127 NW2d 340 (1964) (quotation marks and citation omitted). A "substantial breach" is one that "effect[s] such a change in essential operative elements of the contract that further performance by the other party is thereby ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *Id.* at 574 (citations omitted).

The circuit court made many errors in its summary dismissal of plaintiff's suit. The court erroneously proceeded under the misconception that plaintiff could only avoid summary disposition if she had paid off her mortgage. Although plaintiff did claim that she had paid off her loan, loan satisfaction was not required until 2026. Accordingly, plaintiff would not have breached the contract simply because she had not paid off the debt.

The court's first error led to its second: finding plaintiff's reliance on her CPA's report "misplaced" because it contained "several open items" that "need to be reconciled to bring complete closure." As the loan balance is not due until 2026, "complete closure" is not required. Any holes left in the report created a question of fact; they did not support summary dismissal.

Plaintiff presented significant evidence that something was amiss with the accounting used by the various banks that had serviced her loan over the years. (The CPA report was prepared based in part on that evidence.) No one contests that plaintiff timely and fully paid her mortgage loan obligation between 1996 and 2001. These payments would have totaled approximately $22,750. Plaintiff presented numerous checks, Western Union receipts, and letters memorializing telephone payments between 2002 and 2010, totaling more than $45,650. The balance of plaintiff's loan in 1996 was only $45,750, and from 1996 to 2010 she made over $68,400 in payments. The nearly $23,000 surplus would have made a significant dent in her insurance, tax, and interest obligation had BOA and its predecessors properly accepted and divvied out the payments. Plaintiff presented no evidence identifying the actual tax and insurance obligations for the years in question and therefore cannot definitively declare that she paid off her loan. But this creates a fact question; it does not summarily disprove her case.

Further suggesting significant accounting errors on the part of BOA and its predecessors, plaintiff presented evidence that she received a $1,000 check on April 19, 2013. The accompanying letter from Rust Consulting, Inc. indicated, "You were recently sent a notice that you are eligible to receive a payment as a result of an agreement between federal banking regulators and [BOA] in connection with an enforcement action related to deficient mortgage servicing and foreclosure processes."

Ultimately, the voluminous evidence produced by plaintiff creates a triable question of fact regarding who committed the first substantial breach of the mortgage and note documents. Plaintiff's evidence tends to establish that she timely made full payments and cured defaults when notified by her lender. The Bank of America ledger suggests that the lender did not always apply the entirety of plaintiff's payments toward the various items comprising her debt. If this evidence is credited by the jury, the lender's negligent accounting errors in violation of the contract's provisions regarding the application of borrower payments would have made it

impossible for plaintiff to subsequently comply with the contract. The lender's errors would have caused false defaults, preventing plaintiff from simply making her monthly payments and forcing her into a series of repayment plans that she could never complete due to continuing accounting errors.

In this regard, we find instructive the Court of Appeals for the Sixth Circuit's opinion in *Jawad v Hudson City Savings Bank*, 636 Fed Appx 319 (CA 6, 2016). In *Jawad*, 636 Fed Appx at 320, the plaintiffs took a mortgage loan in 2003 and timely and fully made their mortgage payments for nearly a decade. In 2012, the plaintiffs sought a loan modification from the defendant. The plaintiffs qualified for a modification plan that included a six-month forbearance period followed by an 18-month period during which the plaintiffs would make additional payments to bring their loan current. *Id*. at 320-321. The plaintiffs followed the lender's instructions faithfully. *Id*. at 321. The defendant, however, "failed to respond to plaintiffs' inquiries, misinformed or failed to inform them regarding loan modification programs, and repeatedly demanded documents that plaintiffs had already submitted." *Id*. The defendant proceeded to breach the loan agreement by giving inadequate notice of its intent to accelerate the loan and then foreclose on the mortgage. *Id*.

The federal district court deemed that the plaintiffs had committed the first substantial breach by failing to make certain payments while negotiating the loan modification. *Id*. The Sixth Circuit reversed. The Court noted:

> [T]he reasons given by the district court do not warrant dismissal of plaintiffs' contract claim. The fact that plaintiffs were behind on their **mortgage** payments does not bar them from enforcing the notice provisions of the contract. . . . By failing to give the required notice, the banks breached the contract. [*Id*. at 322 (emphasis in original).]

Here, evidence reveals that BOA and its predecessors breached the contract by failing to correctly apply plaintiff's payments, potentially causing plaintiff's breach.

In *Jawad*, 636 Fed Appx at 322, the Court determined that the plaintiffs did not commit a substantial breach when they fell behind on their mortgage payments: "In the notice provision, the parties expressly contemplated breach by plaintiffs and agreed that, if plaintiffs breached the contract, the banks would provide notice prior to acceleration." After describing Michigan's first substantial breach rule, the Court held, "Considered in the context of the contested provisions, plaintiffs' missed payments did not render notice of acceleration ineffective or impossible." *Id*. We note that the plaintiffs' contractual breach in *Jawad* also did not render it impossible for them to cure their default.

If the jury finds credible plaintiff's evidence in this case, it may determine that BOA and its predecessors failed to properly credit payments. The jury could then conclude that the lenders artificially placed plaintiff in default as early as *2002*, well before plaintiff's first missed payment. This would be a substantial breach as the lenders forced plaintiff to enter a series of loan modifications that changed her repayment terms to her detriment, requiring her to make ever increasing monthly payments while failing to document the reduction of her overall debt.

Accordingly, the circuit court improperly granted summary disposition in BOA's favor. The matter should have proceeded to trial on the evidence.

We vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ David H. Sawyer
/s/ Elizabeth L. Gleicher