# STATE OF MICHIGAN

# COURT OF APPEALS

CARO TRANS OPPORTUNITIES LLC,

      Plaintiff-Appellant,

v

MOBILE MEDICAL RESPONSE, INC.,

      Defendant-Appellee.

UNPUBLISHED
June 14, 2018

No. 337074
Tuscola Circuit Court
LC No. 15-029087-CK

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On July 8, 2014, plaintiff and defendant entered into a commercial lease agreement. Defendant agreed to lease from plaintiff the property located at 1796 West Caro Road in Caro, Michigan, and plaintiff agreed to build out the premises on the property as described in an exhibit attached to the lease. Defendant intended to operate an ambulance facility at the property and to house related office space. The lease agreement provided for a "base rent" amount and further provided that, as "additional consideration," defendant "is conveying" to plaintiff property located at 1162 North Caro Road (the location at which plaintiff was then operating its ambulance facility). That conveyance would result in a rent credit that would be applied to the base rent.

On May 15, 2015, the parties entered into a new lease agreement—in lieu of the July 8, 2014 lease agreement—with substantially identical terms, except that defendant agreed to lease from plaintiff the property located at 1800 West Caro Road (rather than 1796 West Caro Road). Like the earlier lease agreement, the 2015 lease agreement provided that defendant "is conveying" to plaintiff the same property located at 1162 North Caro Road "as additional

-1-

consideration."[1]  Also like the earlier lease agreement, the 2015 lease agreement contained a provision that allowed defendant a partial rent credit to be applied to its first 60 rent payments (i.e., for the first five years of the lease) in return for defendant's conveyance to plaintiff of the 1162 North Caro Road property.  And like the earlier lease agreement, the 2015 lease agreement did not specify when defendant was to convey that property to plaintiff.  Defendant took occupancy of the leasehold premises in early August 2015,[2] before the county building inspector had issued a certificate of occupancy.  Defendant contended that it did so based on plaintiff's representations that the premises were ready for occupancy even though a certificate of occupancy had not yet been issued.  The building inspector issued a certificate of occupancy soon thereafter.

From the beginning of its occupancy, defendant discovered substantial safety and health defects in the premises, including roof leaks, electrical issues, holes in the siding, defective insulation, and improper septic field drainage.  Plaintiff admits that "shortly after taking possession" defendant began to complain of problems with the premises, and had complained of such issues by email no later than August 13, 2015, when defendant's regional manager requested that plaintiff provide an update on the status of repairs addressing the issues. Defendant's regional manager also contacted a local building inspector regarding these issues. The building inspector investigated and found several problems with the building that rendered it uninhabitable.  On September 15, 2015, the inspector revoked the certificate of occupancy and ordered defendant to vacate the premises.  Defendant did so and notified plaintiff that it was rescinding the lease.  A new certificate of occupancy was issued on October 1, 2015 after plaintiff had made repairs to the property; however, that certificate was also revoked on November 9, 2016, over a year after defendant had vacated the premises.

Plaintiff filed suit, alleging breach of contract, unjust enrichment, and promissory estoppel.  Plaintiff argued in part that defendant had breached the lease agreement by failing to convey the property located at 1162 North Caro Road.  Defendant denied liability, asserting that plaintiff had breached the lease first, and that it therefore was not obligated to perform under the

---

[1] Defendant never conveyed the 1162 North Caro Road property in conjunction with the 2014 lease agreement; nor did plaintiff ever seek to enforce the conveyance under that agreement or claim that the failure to convey the property at that time constituted a breach of the 2014 lease agreement.

[2] The lease agreement provided that the rent was "due and payable in advance on the first day of each calendar month, commencing on the Commencement Date."  The Commencement Date is May 15, 2015.  Defendant does not argue, however, that rent was in fact due on the Commencement Date, or on the first day of the month before or after the Commencement Date, or indeed at any time before the first day of the month after possession.  Defendant took possession in early August 2015, and made its first rent payment in September 2015.  Plaintiff does not contend that the first rent payment was late, or that defendant breached the lease agreement by not making the first rent payment earlier.  Indeed, the record reflects, as confirmed by the parties' conduct, an understanding that the first rent payment was due (and first setoff amount therefore would be applied) on the first day of the month following possession.

lease. After discovery, defendant moved for summary disposition under MCR 2.116(C)(10) on the ground that plaintiff was the first to materially breach the lease, and that it had done so by failing to maintain the premises in a habitable condition, resulting in the revocation of the certificate of occupancy and defendant's forced vacation from the premises. Defendant asserted that plaintiff's breach barred it from claiming damages from defendant's rescission of the lease. Plaintiff countered with its own motion for partial summary disposition asserting that, notwithstanding any issues with the habitability of the premises leased to defendant, defendant's failure to convey the property located at 1162 North Caro Road constituted the first material breach of the lease agreement. The trial court held that plaintiff had materially breached the lease first and consequently could not maintain claims against defendant arising out of its rescission of the lease. The trial court therefore granted defendant's motion for summary disposition and denied plaintiff's motion. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim, and is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Summary disposition is proper if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). We consider only the evidence that was properly presented to the trial court in deciding the motion. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003). The interpretation of a contract is a question of law we review de novo, including whether the language of a contract is ambiguous. *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005).

## III. ANALYSIS

Plaintiff contends that the trial court erred by granting summary disposition in favor of defendant because defendant's failure to convey the real property located at 1162 North Caro Road constituted the first material breach of the parties' lease, and that as a result plaintiff was released from its remaining obligations under the lease. Plaintiff further argues that the trial court should have granted partial summary disposition in its favor because the lease required defendant to transfer the property at the outset of the lease. We disagree.

If the language of the contract is unambiguous, this Court construes and enforces the contract as written. *Id*. We give the language of the parties' contract its ordinary, plain meaning; and avoid technical, constrained constructions. *Bianchi v Automobile Club of Mich*, 437 Mich 65, 71 n 1; 467 NW2d 17 (1991). Inartfully worded or clumsily arranged contract terms do not render a contract ambiguous if it fairly admits of one interpretation. *Mich Twp Participating Plan v Pavolich*, 232 Mich App 378, 382; 591 NW2d 325 (1998). If the contract is not ambiguous, trial courts may not substitute their own judgment for the intent of the parties.

*Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 199-200; 702 NW2d 106 (2005).

Courts must construe contracts as a whole, giving effect to all provisions, *Turner v Bituminous Cas Co*, 397 Mich 406; 244 NW2d 873 (1976), and avoiding interpretations that would render any part of the contract surplusage or nugatory. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468-469; 663 NW2d 447 (2003). Courts must also if possible seek an interpretation that harmonizes potentially conflicting terms. *Id.* Further, where a contract contains both specific and general terms, the specific terms control over the general. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 719; 706 NW2d 426 (2005).

The absence of an explicitly stated time for performance or payment does not render a contract invalid or unenforceable. " '[W]hen a contract is silent as to time of performance or payment, absent any expression of a contrary intent, the law will presume a reasonable time.' " *Jackson v Green Estate*, 484 Mich 209, 217; 771 NW2d 675 (2009) (YOUNG, J., concurring), quoting *Duke v Miller*, 355 Mich 540, 542-543; 94 NW2d 819 (1959). " 'It is a general rule of law that where no time is stipulated, a reasonable time will be presumed. Reasonable time depends upon the facts and circumstances of each case.' " *Id*., quoting *Pierson v Davidson*, 252 Mich 319, 324; 233 NW2d 329 (1930).

One party's substantial breach of a contract may relieve the other party of its obligation to perform under the contract. *Alpha Capital Management, Inc v Rentenbach*, 287 Mich App 589, 613; 792 NW2d 344 (2010). Our Supreme Court stated that a substantial breach may be found

> in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party. [*McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (citations omitted.]

Therefore, determination of whether a breach of contract is "substantial" hinges on whether the nonbreaching party obtained the benefit of its contractual bargain. *Able Demolition v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007). A material breach affecting a substantial or essential part of the contract may warrant rescission, *Omnicom of Michigan v Giannetti Investment Co*, 221 Mich App 341, 348, 561 NW2d 138 (1997), as may a failure to perform a substantial part of a contract or one of its essential terms, see *Rosenthal v Triangle Development Co*, 261 Mich 462, 463; 246 NW2d 182 (1933). A mere technical breach, however, will not justify rescission by the nonbreaching party. See *id*. at 464.

"A lease gives the tenant the possession of the property leased and the exclusive use or occupation of it for all purposes not prohibited by the terms of the lease." *De Bruyn Produce Co v Romero*, 202 Mich App 92, 98; 508 NW2d 150 (1993). Leaseholders have a right to beneficial enjoyment of the land "for the purpose for which the premises are rented, at least to the extent disclosed to the lessor at the making of the lease." *Grinnell Bros v Asiuliewicz*, 241 Mich 186, 188; 216 NW 388 (1927). A breach of the covenant of quiet enjoyment occurs when a landlord

"obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold." *Slatterly v Madiol*, 257 Mich App 242, 258; 668 NW2d 154 (2003).[3]

In this case, the lease agreement provided that defendant would be entitled to take possession of the premises once plaintiff had completed the build-out, and it obligated defendant to pay monthly rent. Paragraph 5b of the lease provided a modified rent payment structure for the first five-year term:

> b. MMR Rent Credit. As additional consideration for this lease agreement, Tenant is conveying by warranty deed, property located at 1162 N. Caro Rd, Caro, MI ("Conveyed Property") to Landlord. The parties agree that the Conveyed Property is deemed to have a fair market value of $65,000 and that Tenant shall receive a rent credit of $1,083.33 per month during the term of the lease until the credit has been fully expended after 60 months. In the event of a default, abandonment or termination of the lease by Tenant, there will be no cash value rebated to Tenant for any unused portion of the rent credit. Closing costs for revenue stamps/transfer taxes and title insurance policy in the name of Landlord shall be paid by Tenant.

Therefore, defendant's conveyance of the 1162 North Caro Road property to plaintiff would have entitled it to a reduction in its monthly rent payments. The lease, however, did not specify the timing for that conveyance. Consequently, defendant had to fulfill that obligation within a reasonable time, depending on the facts and circumstances of the case. *Jackson*, 484 Mich at 217.

As plaintiff acknowledges, the lease agreement does not itself purport to convey the property; rather, the property was to be conveyed by separate warranty deed. Despite the use in the lease of the present-tense phrase "tenant 'is conveying' by warranty deed," we see nothing in the lease, or in the facts or circumstances of this case, that supports the inference advanced by plaintiff that the conveyance necessarily had to occur "at the outset of the agreement." Both the 2014 and 2015 lease agreements contained the "is conveying" language, yet plaintiff never sought to enforce the conveyance under the 2014 lease. And both leases contained language indicating that the lease was contingent upon certain zoning approvals. In sum, we discern no basis for inferring that the agreement contemplated that the conveyance would occur contemporaneously with the parties' execution of the 2015 lease agreement. Indeed, we discern no basis upon which to infer that the parties intended the conveyance to occur at any time before, or even contemporaneously with, defendant's occupation of the property. Plaintiff itself appears to have had no issue with defendant occupying the premises before the conveyance occurred. And, as clarified at oral argument, the 1162 North Caro Road property was defendant's *previous*

---

[3] This covenant of quiet enjoyment is made explicit in paragraph 21 of the lease agreement in this case.

place of business—simply put, defendant had to move out of the property (and into the new premises) before it could convey the property to plaintiff.[4]

Nonetheless, plaintiff contends that its interpretation of the lease as requiring conveyance no later than the time of possession is bolstered by the fact that the rent credit was to be immediately applied to defendant's base rent, and that defendant in fact applied the rent credit to its first month's rent payment. However, plaintiff acknowledges that defendant's first month's rent was paid by defendant on September 11, 2015,[5] and by that time defendant had already suffered the effects of plaintiff's breach.

At the time that defendant occupied the leasehold in early August 2015, plaintiff was contractually obliged to provide defendant with habitable premises and uninterrupted quiet enjoyment of the leased property's beneficial use. *Asiuliewicz*, 241 Mich at 188. The trial court record indicates that plaintiff failed to do so. The evidence presented to the trial court established that upon taking possession of the property, defendant discovered serious defects, including roof leaks, electrical hazards, and a malfunctioning toilet and septic system. Substantial building code violations led to the building inspector's investigation and revocation of the certificate of occupancy after he declared the premises uninhabitable. Consequently, the building inspector ordered defendant to vacate the premises just one month after it took occupancy. Further, plaintiff failed to rectify the numerous health and safety issues; at the time of the summary disposition hearing, the certificate of occupancy had been revoked again. The trial court did not err by concluding that plaintiff had failed to deliver on its promises and obligations under the lease. We conclude from the evidence that plaintiff obstructed, interfered with, and substantially failed to provide defendant the beneficial use of the leasehold. *Slatterly*, 257 Mich App at 258. Accordingly, plaintiff's initial material breach of the lease agreement justified defendant's rescission of the lease and terminated its contractual obligations.

## IV. RESPONSE TO DISSENT

The dissent asserts that we have usurped the role of the jury in determining "who breached first," and cites *Jackson* for the proposition that "[d]etermining what constitutes a reasonable amount of time . . . is *necessarily* a factual question properly decided by the jury."

---

[4] We therefore reject plaintiff's alternate position that "[a]t the very least, this language unequivocally demonstrates that [defendant] was to transfer the property upon taking possession of the premises . . . ."

[5] Paragraph 18 of the lease agreement provided certain remedies to plaintiff in the event that defendant failed to pay sums due and did not cure the default within 10 days. As noted earlier in this opinion, the record reflects an understanding that the first rent payment was due on September 1, 2015. Although defendant did not make the first rent payment until September 11, 2015, it acted to cure that default within the 10-day time period allowed under Paragraph 18 of the lease agreement. Plaintiff does not contend otherwise.

*Jackson*, 484 Mich at 217 (YOUNG, J., concurring) (emphasis added).[6]  Although the dissent accuses the majority of omitting necessary language from *Jackson* (although we note that our citation to *Jackson* is limited to *Jackson*'s citation of earlier Supreme Court decisions), it is the dissent that elides, by way of an ellipsis, the context of Justice Young's statement in *Jackson*, which was that "[d]etermining what constitutes a reasonable amount of time *for repayment of a loan* is necessarily a factual question properly decided by the jury."  *Id.* at 217 (emphasis added).  We do not believe that this statement by Justice Young would require that in all situations the imputation of a reasonable time for performance under a contract is a question for the jury.  In any event, we have not made a determination of what a reasonable time for performance would be in this case; we simply conclude that, in the circumstances presented, plaintiff presented no evidence that would allow reasonable minds to differ about whether defendant was required to convey the property before plaintiff's breach.  See *Allison*, 481 Mich at 425.

The dissent also cites Paragraph 14 of the lease agreement,[7] and opines that plaintiff should have had a reasonable time to effect needed repairs.  However, the record shows that plaintiff received written notice of the defects no later than August 13, 2015 and that, despite this notice, defendant was forced to vacate the premises in September because unremedied conditions in the building had led to the revocation of the certificate of occupancy, and that even after a new certificate of occupancy was issued, numerous issues remained with the building.  We conclude that reasonable minds could not differ about whether plaintiff made repairs in a reasonable time such that it could be deemed not to have substantially breached the lease agreement.  See *Allison*, 481 Mich at 425.

---

[6] We note that neither party contends that the issue before us should have been decided by a jury; rather, both parties maintain that summary disposition should have entered in their favor.

[7] Although, as the dissent points out, Paragraph 14 of the lease agreement indicated defendant's acknowledgment that the premises were in acceptable condition, we note that the language was quite specific about the temporal limitation of this acknowledgement: "The Tenant's *execution* of this Lease shall constitute an acknowledgement by Tenant that the Premises *are then* in acceptable condition."  The parties executed the lease on May 15, 2015.  Defendant was not precluded by this paragraph from reporting issues that arose with the property later—as stated, defendant did not take possession of the property immediately upon execution of the lease, nor did plaintiff immediately demand payment of rent.

## V. CONCLUSION

Because plaintiff substantially breached the lease agreement first, the trial court did not err by granting summary disposition in favor of defendant. *Omnicom*, 221 Mich App at 348.

Affirmed. As the prevailing party, defendant may tax costs. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Jonathan Tukel