# STATE OF MICHIGAN

# COURT OF APPEALS

B & C LAND COMPANY,

        Plaintiff-Appellant,

v

BOARD OF EDUCATION OF THE CITY OF
DETROIT,

        Defendant-Appellee.

UNPUBLISHED
October 18, 2018

No. 337846
Wayne Circuit Court
LC No. 15-012898-CK

Before: O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Plaintiff, B & C Land Company, appeals as of right the trial court's order granting summary disposition in favor of defendant, the City of Detroit Board of Education. We reverse in part and remand for further proceedings.

Although the parties agree on the most basic facts, the record at this stage is sorely underdeveloped and, as a result, most of the pertinent facts are unclear or contested. Plaintiff purchased land from defendant in 2004. The purchase agreement was signed on April 27, 2004, and, per its terms, conveyed a single parcel: "615 South West[ End], Detroit, Michigan." Both parties agreed, however, that the purchase agreement was intended to convey more parcels than the one listed. Robert Carmack—who represented plaintiff in the sale—and Jean-Vierre Adams—the attorney that handled the sale on behalf of defendant—testified that the sale was for "the McMillan school site," which consisted of more parcels than the one listed. The deed that defendant transferred to plaintiff following the purchase agreement reflected this. It included three parcels: "615 S. West End Ave.," "711 S. West End Ave.," and "721 S. West End Ave."

Carmack testified that before closing, defendant faxed him a document (the 2004 document)[1] that, according to Carmack, listed 615 South West End as the address "commonly known as McMillan School site." The document itself, which was included with the lower court record, refers to a site that "consists of an abandoned school building and yard" and is made up

---

[1] Plaintiff refers to this document as a "listing agreement," but nowhere in the document does it suggest that it was, in fact, a listing agreement.

-1-

of 11 different parcels with a "common street address" of "615 S. West End." But contrary to Carmack's testimony, the 2004 document does not refer to the McMillan school or state that it represents "the McMillan school site." According to Adams, the 2004 document did not, in fact, represent the McMillan school site, and was actually "a document supplied to [defendant] by . . . Carmack, which outlined what he believed to be the parcels included in the McMillan site."

In the years between 2004 and 2015, the record reflects only one interaction between the parties. That interaction is an authorization letter from defendant for the sale of one of the now disputed parcels of land—"7811 South Street"—to plaintiff. The authorization letter listed the purchaser as plaintiff, listed the purchase price as $10,000, and stated the "Business Justification" for the sale as "[t]he District sold part of the former McMillan building and adjacent land to the B & C Land Company in 2004." According to Adams, the sale referred to in the authorization letter was the result of plaintiff wanting to buy additional parcels adjacent to the ones it already purchased. Carmack disagreed; he testified that the 2007 sale was for parcels that plaintiff already owned by way of the purchase agreement, and that it was willing to pay $10,000 for those parcels because it would cost $10,000 or more to hire an attorney to enforce the purchase agreement. Carmack also testified that the 2007 sale was for more parcels than just 7811 South Street, but he did not explain why the other parcels were not listed in the authorization letter. Regardless of these discrepancies, the parties agree that the 2007 sale was never completed.

Carmack testified that after this second sale fell through, he continued attempting to get the outstanding parcels of the McMillan school site. Sometime around 2015, defendant obtained the services of a title agency to determine whether it owned parcels that plaintiff, through Carmack, had expressed interest in. As a result of the agency's efforts, defendant established that it had title to at least 10 of the parcels in the 2004 document. Relevant to this appeal, the agency concluded that when the purchase agreement was signed, defendant was not the owner of record of two of the parcels in the 2004 document—7811 South Street and 7821 South Street— but still technically owned the parcels. Apparently, defendant had acquired the deeds to those parcels in 1977 pursuant to a "friendly condemnation," but the deeds were never recorded. Defendant did not record the deeds until 2015 after the title agency discovered the defect.[2]

The record also includes email exchanges between the parties during this time, but the significance of these exchanges—if any—is entirely unclear. These exchanges appear to go to the central issue of this case: determining which parcels were transferred in the purchase agreement. Yet, from these exchanges, it is unclear which parcels—or even how many parcels— the parties believed were transferred, i.e., which parcels and how many parcels constituted "the McMillan school site." At one point, Carmack sent an email to Adams asking why defendant

---

[2] While not necessary to the resolution of this appeal, it is unclear whether the agency ever resolved who had title to one of the properties that is now the subject of this appeal: 7831 South Street. As of defendant's October 3, 2016 motion for summary disposition, defendant believed that it did own that parcel.

"only sent paperwork on one lot instead of 7," but then later stated "the deed I have lists only 3 parcels and should be 10."[3]  In a later email from Adams to Carmack, she stated that defendant did not own some of the parcels plaintiff sought,[4] that one of the parcels—7811 South Street—could be sold to plaintiff "for best and final per the Michigan Treasurer's office," and that "[a]ll other parcels for the MacMillan [sic] school will be included in the Correcting [sic] Deed which we should have available for you this week."

Defendant eventually issued plaintiff a "Corrective Deed" in October 2015.  This deed included 7 of the 11 parcels in the 2004 document: "615 S. West End Ave.," "711 S. West End Ave.," "721 S. West End Ave.," "515 S. West End Ave.," "741 S. West End Ave.," "704 S. Springwells Ave.," and "706 S. Springwells Ave."  Accompanying the deed was an unsigned letter on the "Detroit Public Schools" letterhead, which stated that "[t]he enclosed Corrective Quitclaim Deed includes all of the parcels comprising the McMillan School Site . . . ."  Consistent with this document, Adams testified that the corrective deed was intended to convey the entire McMillan school site as contemplated by the parties at the time of the purchase agreement, and that the McMillan school site consisted of only those seven parcels.  Carmack disagreed; he testified that the McMillan school site—which he agreed was the only property transferred in the purchase agreement—included three additional parcels: 7811 South Street, 7821 South Street, and 7831 South Street.[5]  This disagreement led plaintiff to file the suit that is now before this Court.

In its complaint, plaintiff alleged (1) that defendant breached the parties' purchase agreement by not transferring the remaining three parcels of the McMillan school site and plaintiff was entitled to specific performance, and (2) that plaintiff was entitled to quiet title of the remaining three parcels because it had performed its obligations under the purchase agreement and effectively extinguished defendant's interest.  Defendant eventually filed for summary disposition, arguing—among other things—that there was no breach of contract because there was no contract.  According to defendant, "there was no contract between the parties to convey the South Street properties because there was no meeting of the minds to convey these parcels."  Defendant also argued that plaintiff was not entitled to reformation of the

---

[3] The 2004 document discussed earlier included 11 properties, not 10.  Plaintiff never sought one of those parcels—"7818 W. Jefferson Ave."—until this appeal.

[4] Adams listed three parcels in the email: "741 [S.] West End, 7821 and 7831 South Ave. [sic]." As mentioned, it was eventually resolved that defendant owned 7821 South Street pursuant to an unfiled deed, and it is apparently still unresolved whether defendant owns 7831 South Street.  As for 741 S. West End, it is unclear how this ownership issue was resolved, but defendant nonetheless eventually transferred the parcel to plaintiff in a corrective deed.

[5] Again, although the 2004 document included 11 parcels, plaintiff did not seek the Jefferson address until this appeal; in plaintiff's response to defendant's dispositive motion, it stated that it "maintains that three additional lots were intended to be included in the sale."  Indeed, it would have been difficult for plaintiff to argue to the contrary—as it does on appeal—because Carmack testified that plaintiff did not own nor did it ever attempt to purchase the Jefferson address.

contract because there was no mutual mistake and plaintiff's unilateral mistake—that the contract included the South Street properties—was not the result of fraud. Lastly, defendant contended that plaintiff failed to "make out a prima facie case of title" in the South Street properties, so its quiet-title claim must fail.

After a hearing on defendant's motion, the trial court issued its ruling on the record. The trial court first addressed plaintiff's quiet-title claim and dismissed it, concluding that plaintiff failed to establish its prima facie case. With respect to plaintiff's breach-of-contract claim, the trial court found that there were no latent ambiguities in the parties' contract. It noted that plaintiff argued that the deed did not reflect the parties' intent, but it disagreed with this argument and affirmed its finding that there were no latent ambiguities. It then addressed extrinsic evidence and found that the evidence did not show that the parties intended to convey the three contested parcels as part of the purchase agreement, and "[i]n fact, there's evidence opposite of that." The trial court pointed out that neither the 2004 nor the 2015 deeds included the South Street parcels, and also noted that the 2007 proposed sale was for one of the now-contested parcels, which the trial court opined evidenced that there was never approval for sale of the South Street parcels until that time. The trial court also found it significant that two of the South Street parcels were not listed on record as belonging to defendant at the time of the purchase agreement. The trial court concluded that, because there was no evidence of a latent ambiguity, plaintiff's claim that the purchase agreement included the South Street parcels was unsupported, and therefore its breach-of-contract claim failed. It thereafter granted defendant's motion for summary disposition.

On appeal, plaintiff only argues that the trial court erred by concluding that the purchase agreement was unambiguous and defendant was entitled to summary disposition as a matter of law.[6] We agree that the trial court erred by concluding that there was no latent ambiguity in the parties' purchase agreement, and ultimately hold that, when construing the evidence in the light most favorable to plaintiff, summary disposition on plaintiff's breach-of-contract claim was inappropriate. Appellate courts reviews de novo a trial court's grant or denial of summary disposition. *Johnson v Recca*, 492 Mich 169; 173; 821 NW2d 520 (2012). The proper interpretation of a contract—including whether the contract contains an ambiguity—is a question of law that appellate courts likewise review de novo. *Farm Bureau Mut Ins Co of Michigan v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999).

The trial court did not specify the court rule under which it granted defendant's dispositive motion. Nonetheless, because the trial court considered depositions and other evidence, we conclude that it granted the motion under MCR 2.116(C)(10). As explained by our Supreme Court in *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999):

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other

---

[6] Plaintiff does not appeal the trial court's ruling on plaintiff's quiet-title claim, so we do not address that part of the trial court's ruling.

evidence submitted by the parties, MCR 2.116(G)(5). Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

"The primary goal in interpreting contracts is to determine and enforce the parties' intent." *Old Kent Bank v Sobczak*, 243 Mich App 57, 63; 620 NW2d 663 (2000). "To do so, this Court reads the agreement as a whole and attempts to apply the plain language of the contract itself." *Id*. "An unambiguous contract must be enforced according to its terms." *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005) (quotation marks and citation omitted). "However, when a contract is ambiguous, this Court may construe the agreement in an effort to find and enforce the parties' intent." *Old Kent Bank*, 243 Mich App at 63.

In *Henderson v State Farm Fire & Casualty Co*, 460 Mich 348, 353; 596 NW2d 190 (1999), our Supreme Court explained the interplay between the standards for summary disposition and the rules of contract construction:

It is axiomatic that if a word or phrase is unambiguous and no reasonable person could differ with respect to application of the term or phrase to undisputed material facts, then the court should grant summary disposition to the proper party pursuant to MCR 2.116(C)(10). *Moll v Abbott Laboratories*, 444 Mich 1, 28 n 36; 506 NW2d 816 (1993). Conversely, if reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists. *Id*.

An ambiguity may be either patent or latent. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). A patent ambiguity is one that clearly appears on the face of the document at issue and "arises from the defective, obscure, or insensible language used." *In re Kremlick Estate*, 417 Mich 237, 240; 331 NW2d 228 (1983) (quotation marks and citation omitted). "A latent ambiguity, however, is one that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *Shay*, 487 Mich at 668 (quotation marks and citation omitted). Stated differently, "[a] latent ambiguity is one where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among 2 or more possible meanings." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 575; 127 NW2d 340 (1964) (quotation marks and citation omitted). "Because the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity[.]" *Shay*, 487 Mich at 668 (quotation marks and citation omitted).

Applying this law to the facts before us, we conclude that there is a latent ambiguity in the parties' purchase agreement. The purchase agreement listed only a single parcel: "615 South West[ End]." Yet the parties agreed that, at the time of signing, this did not represent all of the parcels that the purchase agreement intended to convey; representatives of both parties testified that the purchase agreement was for "the McMillan school site," and that the McMillan school

site consisted of more parcels than just 615 S. West End. This is reflected in the parties' performance under the purchase agreement. Defendant initially transferred three properties to plaintiff: the one identified in the purchase agreement plus two unlisted parcels. Later, in 2015, defendant issued a corrective deed to plaintiff for more parcels transferred under the purchase agreement. The corrective deed identified seven parcels, six of which were not listed in the purchase agreement. Thus, although the purchase agreement clearly and intelligibly stated that it was for the transfer of "615 South West[ End]," extrinsic evidence established that this term was ambiguous and that the parties intended to transfer additional, unlisted parcels. Simply put, the extrinsic evidence established there is a latent ambiguity in the parties' purchase agreement.

"[I]f a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue." *Shay*, 487 Mich at 668. Upon further examination of the extrinsic evidence, we conclude that based on the facts before us, reasonable minds could disagree about whether the parties intended to transfer the South Street parcels under the purchase agreement, and thus there are questions that must be resolved by a factfinder. See *Henderson*, 460 Mich at 353.

Courts may not resolve factual disputes or determine credibility at the summary-disposition stage. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). For this reason, "[t]he granting of a motion for summary disposition is especially suspect where motive and intent are at issue or where a witness or deponent's credibility is crucial." *Vanguard Ins Co v Bolt*, 204 Mich App 271, 276; 514 NW2d 525 (1994).

Both Adams and Carmack testified that, despite the parties' use of "615 South West[ End]" to identify the property transferred under the purchase agreement, they actually intended to convey "the McMillan school site" from defendant to plaintiff. They disagreed, however, on what constituted "the McMillan school site." Adams, who represented defendant in the purchase agreement, testified that, at the time of the purchase agreement, she understood the McMillan school site to be comprised of only the seven parcels transferred to plaintiff in the corrective deed. Carmack, who represented plaintiff in the purchase agreement, testified that, at the time of the purchase agreement, he understood the McMillan school site to include the seven parcels in the corrective deed as well as the three contested South Street parcels. If this were the only evidence, we would hold that plaintiff failed to establish a genuine issue of material fact as to the *parties'* intent because "the unilateral subjective intent of one party cannot control the terms of a contract," *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004), and only plaintiff testified that he believed that the McMillan school site included the South Street parcels. But this is not the case because of the contested 2004 document.

We recognize that the 2004 document does not mention the McMillan school by name or state that it represents "the McMillan school site,"[7] but we conclude that this is not

---

[7] Despite the lack of express mention of the McMillan school in the 2004 document, we note that the document lists the common address of the site it describes as "615 S. West End," and it is undisputed that 615 S. West End was part of the McMillan school site. In fact, not only was that

-6-

determinative; by the terms of the purchase agreement, the parties agreed to transfer "615 South West[ End]," and the question now before us is what the parties intended by that term.[8] The 2004 document describes a site whose "common street address is 615 S. West End." Carmack testified that defendant faxed plaintiff this document before the parties signed the purchase agreement, and because we must construe the evidence in favor of plaintiff as the nonmoving party, *Allison*, 481 Mich at 425, we accept this testimony as true. In this light, when the parties met to sign the purchase agreement, each could have understood that 615 S. West End represented the 11 parcels listed in the 2004 document. And when the parties used "615 South West[ End]" to designate the property transferred under the purchase agreement, it could suggest that they intended to transfer the parcels listed in the 2004 document, which includes the South Street parcels. Thus, there is a question of fact whether the *parties* intended to transfer the South Street parcels under the purchase agreement based on their decision to identify the property as "615 South West[ End]."

Because plaintiff does not challenge the trial court's ruling on its quiet-title claim, that ruling is affirmed. But we agree with plaintiff that the trial court erred by granting summary disposition on its breach-of-contract claim, so we reverse.[9]

Reversed in part and remanded for further proceedings. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood

---

address part of the site, but representatives from both parties testified that their use of "615 South West[ End]" in the purchase agreement referred to "the McMillan school site."

[8] Although the parties agreed that "615 South West[ End]" as used in the purchase agreement referred to "the McMillan school site," they disagreed on how to define "the McMillan school site," so their agreed-upon meaning of "615 South West[ End]" is of no aid to us in determining which parcels they intended to convey.

[9] In its dispositive motion, defendant asserted other grounds for summary disposition which the trial court did not address. Our decision does not preclude defendant from reasserting those grounds on remand.